BAY CITY TRACTION & ELECTRIC CO. *v.* BAY CITY.

1. MUNICIPAL CORPORATIONS — CONTRACTS — POWER TO MAKE — CHARTER PROVISIONS—SUBSEQUENT RATIFICATION.

On a bill to restrain a municipal corporation from entering into contracts for the establishment of an electric lighting plant, *held*, that the charter of the city made the adoption of a resolution declaring "that it is expedient for the city to acquire by purchase, or to construct or extend as the case may be, works for the purpose of supplying the city and vicinity with gas, electric or other lights," a condition precedent to the acquisition, construction or extension of such works. The adoption of such a resolution after the letting of contracts for the improvement is of no effect, it being an attempt to supply after the act the necessary preliminary power to do the act.

2. SAME—CHARTER PROVISIONS—BOARD OF ESTIMATES.

Where the charter of a municipal corporation provided that, before any money shall be raised, the common council shall submit its estimate of the amount required for a particular purpose to a board of estimates for its approval, the letting of contracts for the establishment of an electric lighting plant without such submission and approval is invalid.

3. SAME—CONSTITUTIONAL LAW—BOARD OF ESTIMATES—APPOINTMENT.

Under article 15, § 14, of the Constitution, the appointment of a board of estimates by the common council of a municipal corporation is valid.

Appeal from Genesee; Wisner, J. Submitted November 19, 1908. (Docket No. 175.) Decided February 2, 1909.

Bill by the Bay City Traction & Electric Company against the city of Bay City to enjoin the furnishing of electricity for commercial purposes, and from entering into certain contracts. From a decree for complainant, defendant appeals. Affirmed.

*Weadock & Duffy* (*Cooley & Hewitt*, of counsel), for complainant.

*Samuel G. Houghton* (*John E. Kinnane* and *H. M. Gillett*, of counsel), for defendant.

BLAIR, C. J.   The complainant in this cause seeks to restrain the city of Bay City from carrying on and extending commercial lighting, in which it is engaged, and to restrain the said city from carrying out certain contracts which it made on January 14, 1908, for the enlargement and reconstruction of one of its electric lighting plants. The city of Bay City has upwards of 50,000 inhabitants; the assessed valuation of its property exceeds $15,000,000; and in January, 1908, its common council consisted of 36 aldermen, or 2 from each of its 18 wards.   Prior to April, 1905, the territory which is now Bay City comprised the two separate cities of West Bay City and Bay City, which were separated only by the Saginaw river.   Efforts to bring about a consolidation of the cities had been made from time to time, and, finally, the legislature of 1903 passed an act providing for such consolidation, being Act No. 514 of the Local Acts of 1903, which is referred to in the record as the "consolidated charter."   Among other things, it was provided that the act of consolidation should go into effect on the election and qualification of the city officers thereunder in April, 1905.   The city of West Bay City had a lighting plant, and had been engaged in commercial lighting, and in lighting its streets and public places, since 1897.   Bay City also owned an electric lighting plant, and had been engaged in lighting its streets and public places from said plant for over 20 years, and in doing commercial lighting for a little more than a year, prior to consolidation.   At the date of the consolidation of the two cities each was furnishing light for its streets and public places from its municipal lighting plant, and each of the cities was engaged in commercial lighting; the city of West Bay City then having 579 commercial light

subscribers, and the city of Bay City having 64. This was the status at the date of the consolidation, April, 1905. By the act of consolidation, the electric lighting plants of both cities and all of their municipal property passed to and vested in the consolidated city.

Subdivision 26 of section 22 of the consolidated charter empowers the common council " to acquire works by purchase or otherwise for the purpose of supplying said city with electric light," etc. Sections 96 and 97 provide for the appointment of an electric light committee to have the care, control, and management of the electric light plants, under such regulations as the council should see fit to adopt. Sections 166, 167, of chapter 14, are as follows:

"SEC. 166. It shall be lawful for the city to acquire or purchase or to construct, operate and maintain either independent of or in connection with the waterworks of the city either within or without the city, works for the purpose of supplying the city and vicinity with gas, electric or other lights, at such times and on such terms and conditions as hereinafter provided.

"SEC. 167. Whenever two-thirds of the aldermen elect shall by resolution declare that it is expedient for the city to acquire by purchase, or to construct or extend as the case may be, works for the purpose of supplying the city and vicinity with gas, electric or other lights, then the council shall have power to take such action as shall be deemed expedient to accomplish such purpose: *Provided*, That the city shall continue to maintain and operate the lighting systems now owned by the city of Bay City and the city of West Bay City, as now used, operated and maintained for municipal and commercial lighting."

By amendment to the consolidated charter made in 1907, a board of estimates was created, the amendment being found in Act No. 636, Local Acts 1907. Section 165a provides for the creation of a board of estimates, the members of which are to be appointed by the common council. The board is to consist of five members, who

are to hold their office for a term of one, two, three, four, and five years, respectively.

Section 165*b* is as follows:

"Before any money shall be raised or taxes levied and collected, for the purposes of the several funds mentioned in the charter of said city, or for school or library purposes in said city, the estimates of the council and the board of education of the amounts of money required for such funds or purposes shall be submitted to said board of estimates for approval and before any bonds or other evidence of indebtedness shall be issued by the city or any board thereof, said issue shall be approved by said board of estimates, unless they have been authorized by a vote of the people as provided in said charter. The estimates of the general city taxes shall be acted upon by the council as provided by the charter, and shall be submitted to said board of estimates on the first Thursday in May to be considered by the board and reported by it to the council on or before the third Monday of May. The said board shall carefully consider all estimates required by this act to be submitted to it, of moneys to be raised as aforesaid, and shall approve or disapprove of the same. It may decrease the amount to be raised, but it shall not increase the same, and may approve, subject to the conditions of this act, the sale of bonds of said city, or boards, thereof, when thereto authorized by law. The majority of all members of said board shall be required to approve of any of such estimates for the raising of taxes, or any part thereof or for authorizing the issue of any bonds or other evidence of indebtedness against said city, except when the same are authorized by a vote of the taxpaying electors of said city as provided by this charter."

Section 165*c* is as follows:

"All votes of said board, approving or disapproving any estimates, or decreasing the amount thereof, or the authorizing or disapproving the issuing of bonds, shall be taken by yeas and nays and entered upon the record of its proceedings. After the said board shall have considered the said matters required to be submitted to it, it shall cause a statement of the amounts approved by it to be raised by taxation or issue of bonds, and the fund or purpose for which it is raised, to be made, which statement being adopted by a majority of the members elect of the board,

shall be then signed by the president and clerk of the board and shall be transmitted- to the council, and only so much of such estimates or amounts to be raised by taxation as shall have been approved by said board shall be raised and collected in said city, and only such bonds and other evidence of indebtedness against said city shall be issued as shall be authorized by said board as herein provided, or as shall have been authorized by a vote of the qualified electors of the city, or the taxing district affected thereby in accordance with the provisions of the charter of said city. The council of said city, upon the approval of said estimates, or any part thereof, by said board, may cause to be levied and collected by general taxes the amount thereof so approved, in the manner in this charter provided, and may issue any bonds so authorized to be issued by said board as aforesaid; provided, the amount approved by said board for school purposes, for interest and sinking fund, and for the purpose of paying the street improvement and sewer bonds and interest thereon as provided in this charter, shall be levied in full."

Under the consolidated charter the annual budget is required to be prepared by the ways and means committee and submitted to the council for approval. Upon the 29th of July, 1907, the annual budget for the year 1907 was submitted to the council of Bay City and was approved and adopted by that body, and, in conformity with the charter provisions, was referred to the board of estimates. In the annual budget as adopted by the common council and as referred to the board of estimates for approval, the amount appropriated for lighting was the sum of $22,000; for street lighting and for city hall lighting and heating, $2,400. After having been considered by the board of estimates, the budget was returned by them to the council for final adoption; the amount appropriated for street lighting being $20,000; city hall lighting and heating, $2,400. The report of the board of estimates contained, among other things, the following:

"Mr. Fitzhugh appeared on behalf of the electric light department for Bay City and stated that the sum of $15,000 is on the books to its credit, this amount being profits from the service. In view of this fact, we would

recommend that the present price now charged of $55 per arc per annum, a total of $22,000 for the 400 lights furnished, be reduced; and in comparison with the cost of street lighting in two Michigan cities, viz., Grand Rapids and Detroit, the charge at Grand Rapids being $34.14, and Detroit $34.39, that same should not exceed $50 per light. As a proposition is now before the council for commercial lighting on a larger scale and changing the system, that might require the amount of money now to the credit of this account; but should no action be taken for the change of system, then the price of lighting should be reduced to $50 per light, making total amount approved at $20,000."

Upon the final adoption of the report of the board of estimates by the common council, and in conformity with the charter provisions, the several amounts for the various purposes mentioned in said report were ordered to be assessed by the board of assessors upon the city assessment roll for 1907 against the assessable property in Bay City.

Upon July 29, 1907, the common council of Bay City, being the then consolidated city, adopted a report of the electric light committee theretofore to it made, which report is as follows:

"*Gentlemen:* In the interest of economy, improved service and increased capacity thereby placing the electric plant in condition to supply additional street lights as needed, we respectfully recommend that the electric station at the corner of Eleventh and Jefferson streets be abandoned after re-establishing the same with a larger and modern equipment in the building owned by the city, which was formerly used as an electric station and waterworks facing on Linn street, west side of Saginaw river."

This report was signed by the entire electric light committee, and was adopted by a vote of 21 yeas and 8 nays, being less than a two-thirds vote of all the aldermen elect required by section 167 of the charter.

Upon August 5, 1907, the common council adopted the following resolution:

"Resolved, that the superintendent and committee on electric lighting furnish this common council with a statement showing in detail the actual cost of re-establishing electric lighting plant on the west side of the river, and also giving figures in detail as to what amount will be realized on account of applying, or in the selling of machinery which will not be used in the proposed re-established plant; and be it further resolved, that no definite action be taken in the re-establishing of said plant until after such figures have been submitted and approved."

Upon September 23, 1907, the electric light committee submitted the following report:

" *Gentlemen:* In reference to Ald. Evans' resolution adopted August 5, 1907, page 469, common council proceedings, which instructed this committee to report the actual cost of re-establishing the electric plant on the west side of the river, we report as follows: For the purpose of complying with the resolution this committee engaged an expert August 15th to prepare a report under the condition set forth. Up to our last meeting, September 18th, this expert had failed to comply with our request and we concluded to dispense with his services, which we did September 20th. We see no way to comply with the resolution except by obtaining bids on the apparatus to be installed and recommend that the resolution submitted by Ald. Evans and adopted August 5, 1907, by this council be and the same is hereby rescinded. And that this committee through the comptroller receive bids for the apparatus to be installed. All bids to be reported to the common council for confirmation."

The report was signed by the entire committee, and was adopted by the common council of Bay City upon the 23d of September, 1907. Thereafter, Bay City, pursuant to the aforesaid reports, prepared and printed specifications for new equipment, machinery and apparatus, and received bids from various electrical machinery companies, which bids were accepted, the total amount of the bids being the sum of $37,760.

Upon January 13, 1908, the electric light committee reported to the common council as follows:

"Pursuant to the provisions of a certain resolution adopted by your honorable body at a regular session held September 23rd last (c. p. 563) plans and specifications were prepared in detail and regular proposals sent out and notice given to receive bids for furnishing the necessary material and equipments to be used in extending, reconstructing, perfecting, completing and reorganizing the city's electric lighting plants, and received the following bids therefor, from the following named persons: [giving list of bids]. We have carefully considered all of said bids and herewith recommend the following bids be accepted and contract awarded to the respective parties as hereinafter indicated:" etc.

The report was signed by the entire committee, and was adopted upon the date of its presentation to the council by a vote as follows: Yeas, 31; nays, 3—total number of aldermen elect composing the common council at that time being 36.

Upon January 14, 1908, Bay City, by its mayor and comptroller, pursuant to the resolution of January 13th, executed contracts in writing with the Allis-Chalmers Company, Westinghouse Electric & Manufacturing Company, J. Laing Electric Company, and Arbuckle-Ryan Company, according to the bids and proposals of these companies accepted by the common council of Bay City.

Upon January 18th, the complainant, Bay City Traction & Electric Company, filed its bill of complaint as a property-owning taxpayer, in the circuit court for the county of Bay, in chancery, against Bay City, the Allis-Chalmers Company, Westinghouse Electric & Manufacturing Company, J. Laing Electric Company, and Arbuckle-Ryan Company, defendants, charging that:

"Bay City has no power to engage in the business of furnishing light, heat, and power for commercial use in said city, or to enter into any contract for the acquirement of new machinery, equipment, or apparatus, or for enlarging or extending its said plant as, contemplated by it, because: (a) It has not been legally authorized so to do by the legislature of the State of Michigan. (b) It has been prohibited from entering into such contracts by the

legislature of the State of Michigan. (*c*) That the purpose contemplated is in violation of section 9 of article 14 of the Constitution of the State of Michigan, as amended by the legislature in 1905. (*d*) That no money has been raised or provided for as required by sections 165*a*, 165*b*, 165*c*, and 165*d* of the charter of Bay City, as referred to in the sixteenth paragraph hereof" and praying for temporary and permanent injunctions to restrain the defendants from carrying out the proposed improvements.

Upon January 20, 1908, the common council of Bay City passed the following resolution:

"By Ald. Mohr: Whereas, the electric light plant, commonly known as the Eleventh street electric lighting works, has been in use by the city for twenty years and upwards, to which in recent years a very limited amount of repairs and improvements have been made, and in consequence thereof the machinery therein has become old and nearly worn out and expensive to maintain and operate for lighting purposes; whereas, said plant is liable at any time to serious breakdowns and thus place the city and public streets and alleys thereof in darkness for an indefinite period of time; whereas, said electric light works can no longer be economically maintained and operated in its present condition; and, whereas, it is apparent that said plant will have to undergo very expensive repairs and practically be reconstructed in order to maintain same in the public service economically; therefore: Resolved, that in the economical administration, continuance and maintenance of said public lighting plant it is hereby determined necessary and expedient that said public lighting plant be promptly and as speedily as possible fully, completely and properly repaired, remodeled and reconstructed to meet the public requirements and demands thereon and that the same be and is hereby ordered to be so done without delay on present site or at some other location if in the opinion of the electric light committee same can be done economically and advantageously to the city," which was adopted by the following vote: Yeas, 30; nays, 3.

The circuit court held that the complainant's third and fourth grounds for relief were established by the proofs and granted a permanent injunction. Defendant has ap-

pealed to this court. As we have reached the same conclusion as the circuit judge, it is unnecessary to consider the other questions discussed in the able and elaborate briefs of counsel.

The language of the charter provision is that, "*whenever* two-thirds of the aldermen elect shall *by resolution* declare that it is expedient, * * * *then* the council shall have power*," etc. The meaning of the language used is plain, and the legislative intent is unmistakable that the power of the council to carry out its purpose depends upon its first adopting a resolution determining the expediency of the purpose. The provision of the charter is not a general one, couched in general terms and relating to improvements generally, but a specific one relating to the very improvement sought to be made. To sustain the action of the council, we must by so-called construction nullify an unambiguous provision of a statute which the legislature enacted under all the sanctions of our Constitution and laws. The reasons why we should decline to adopt such a construction are so clearly stated by Chief Justice COOLEY in the case of *Hoyt* v. *City of East Saginaw*, 19 Mich. 39, that further discussion is unnecessary.

The passage of the resolution of expediency after the letting of the contracts was of no effect, because there was nothing to ratify. It was an attempt to supply after the act the necessary preliminary power to do the act.

We think it equally clear that the question of incurring the expenditures involved in the contracts was not submitted to and approved by the board of estimates, and that funds for such improvements and to meet the obligations of the contracts had not been provided for with the approval of that board, and the action of the council was therefore invalid. *Robinson* v. *City of Detroit*, 107 Mich. 168; *Attorney General* v. *City of Detroit*, 113 Mich. 494; *City of Detroit* v. *Blades*, 133 Mich. 249; *Carney* v. *Whelan*, 147 Mich. 15.

The point that the board of estimates is an unconstitu-

tional board because appointed by the common council instead of elected by the electors of the city is not well founded. Constitution, art. 15, § 14; *Robinson* v. *City of Detroit*, supra.

The decree is affirmed, with costs to complainant.

GRANT, MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.