McVEIGH *v.* CITY OF JACKSON.

1. MUNICIPAL CORPORATIONS—PURCHASE OF OFF-STREET PARKING LOTS—AUTHORITY—APPROPRIATION.

   Revenues derived by home-rule city from on-street parking were not usable for purchase of off-street parking lots in the absence of authority conferred upon municipal officers to make such purchase or appropriation duly made therefor (Jackson Ordinances Nos 194, 221, 223).

2. SAME—ORDINANCES—REFERENDUM—BOND ISSUE.

   Item of home-rule city budget entitled "reserve for bond issue" became ineffective as an appropriation, where the bond issue involved had been defeated on referendum of ordinance providing therefor (Jackson Ordinance No 223).

3. SAME—CITY COMMISSION—TRANSFER OF FUNDS—APPROPRIATION.

   Provision of home-rule city charter authorizing the city commission to transfer an unencumbered balance of an appropriation "to a purpose for which the appropriation for the current year has proven insufficient" was not applicable so as to authorize city commission to transfer balance in a veterans housing fund to the general fund and then use it for purchase of off-street parking lots where there had been no appropriation for such purchase (Jackson Charter, § 136).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 42 Am Jur, Public Funds § 68.
[1, 3] Municipal establishment or operation of off-street public parking facilities, 8 ALR2d 373.
[3] 42 Am Jur, Public Funds §§ 79, 30.
[3] Right of county or municipal authorities temporarily to loan or transfer money from one fund or department to another. 70 ALR 431.
[4] 42 Am Jur, Public Funds § 49.
[4, 5] 42 Am Jur, Public Funds §§ 42, 44.
[7] 14 Am Jur, Costs §§ 23, 91.

4. SAME—EXPENDITURE OF PUBLIC FUNDS—APPROPRIATIONS.

Fact that purpose for which city commission of home-rule city sought to expend public funds was a legal purpose, such as purchase of parking facilities, would not avoid the necessity for complying with charter provisions relative to preparing a budget which was subject to a public hearing (Jackson Charter, §§ 134–138; Ordinances Nos 221, 223).

5. SAME—EXPENDITURE OF PUBLIC FUNDS—APPROPRIATIONS—CHARTERS.

The expenditure of public funds by a municipal corporation is unlawful in the absence of an appropriation therefor in accordance with the charter, where the charter provides that there must be an authorized appropriation of public funds to justify the expenditure thereof.

6. APPEAL AND ERROR—SUPREME COURT—RECORD—BRIEFS.

The Supreme Court considers a case as it has been submitted to the Court, on the record and briefs, and, in the absence of a motion in such Court pending appeal, a supplemental record or a remand to the trial court, does not consider presumable subsequent changed circumstances not before the Court.

7. COSTS—PUBLIC QUESTION—EXPENDITURE OF PUBLIC FUNDS—MUNICIPAL CORPORATIONS.

No costs are allowed in suit to restrain the expenditure of public funds by a home-rule city commission which has failed to comply with pertinent provisions of city's charter, a public question being involved (Jackson Charter, §§ 134–138).

Appeal from Jackson; Sweet (Lucien F.), J., presiding. Submitted October 14, 1952. (Docket No. 57, Calendar No. 45,521.) Decided January 5, 1953.

Bill by William E. McVeigh against City of Jackson and others to restrain transfer of funds for the 1951–1952 fiscal year to pay for land for off-street parking lots. Decree for defendants. Plaintiff appeals. Reversed.

*John J. Gallagher* and *Kleinstiver & Anderson,* for plaintiff.

*Alvin G. Dahlem* and *L. Russell Heuman,* for defendants.

Boyles, J.   Plaintiff taxpayer of the city of Jackson filed this bill of complaint to enjoin the defendant city, its mayor and clerk from transferring or using public funds for the 1951–1952 fiscal year to pay for land for off-street municipal automobile parking lots.   The circuit judge who heard the case held that the defendants had acted lawfully and within their authority, dissolved a temporary injunction and dismissed the bill.   The plaintiff appeals.   The only question for decision is whether the defendants had acted lawfully within such authority, under the city charter and its ordinances.

Jackson is a home-rule city,* with a commission-manager form of government.   Its ordinance 194, adopted in 1945, provides for on-street parking meters.   In September, 1950, ordinance 221 was adopted, creating an automobile parking system board to prepare plans for both street and off-street parking and to include acquiring off-street parking lots and facilities.   Said ordinance authorized the board to secure options for the lease or purchase of real estate but not to act further in that regard without approval of the commission.   On June 19, 1951, the commission adopted ordinance 223, which in all essential respects followed an ordinance adopted by the village of Wayne which was considered by this Court in *Wayne Village President* v. *Wayne Village Clerk,* 323 Mich 592 (8 ALR2d 357).   In that case the Court held that the municipality

---

* PA 1909, No 279, as amended (CL 1948, §§ 117.1–117.38, as amended [Stat Ann 1949 Rev and Stat Ann 1951 Cum Supp §§ 5.2071–5.2118]).

had the power to adopt such an ordinance and to provide therein for off-street automobile parking facilities.

The provisions of said ordinance 223, as in the village of Wayne ordinance, *supra,* provided for the issuance of revenue bonds to pay the costs, including off-street parking. Petitions were promptly filed to submit the revenue bond provisions of the ordinance to a referendum vote of the electors, which was done. The provisions of said ordinance 223 which authorized the issuance of revenue bonds to pay the cost of the facilities were eliminated from said ordinance by an adverse vote of the electors on the referendum. The other provisions of the ordinance were not submitted to the referendum vote, and no question has been raised in this case claiming that they are not still in effect. Under them, the city has established an automobile parking system and authorized the acquisition of on-street and off-street parking facilities, and combined the revenue derived from the operation thereof for the purposes declared therein, in a single automobile parking system. The authority to acquire off-street parking facilities remains, without authority to issue revenue bonds to pay the cost thereof. Specifically described in said ordinance are several lots for off-street parking facilities, including those involved in the present controversy. In the absence of the authority to issue revenue bonds, which was eliminated by the voters, or in the absence of some lawful appropriation of other public moneys for use in accordance with the ordinance, such expenditures are limited in section 2 of the ordinance as follows:

"The revenues derived from on-street parking through meters shall be considered a portion of the revenues of the system, subject to the pledge and allocation as hereinafter provided, from and after July 1, 1951."

The "pledge and allocation" therein referred to, in section 13 of the ordinance, limits the use of the revenues of the system to the expenses of operation and maintenance of the system, for bond and interest redemption, for replacement and improvements. Reference has been made in the record to a balance of about $35,000 in the revenues derived from the street parking meters. However, there is an absence of any authority in ordinance 223 to use this money, as suggested by the city, for acquiring off-street parking lots. Nor have such funds as yet been referred to in the budget or appropriated by the commission, for such purpose.

On May 1, 1951, the city manager presented to the city commission the proposed budget for the fiscal year 1951–1952, as required by sections 134–138, inclusive, of the city charter. Apparently this was in contemplation of the adoption of ordinance 223, which did not occur until June 19th, later followed by the referendum. The budget was adopted by the city commission May 29th. It contained no appropriation for off-street parking lots or development of parking areas. While the budget itemized 24 purposes for which proposed expenditures might be made for parking, with estimated expenditures and budget requests for 1951–1952, there was no request to expend money for "development of parking areas," for "parking," or any other indication of appropriating money for off-street parking lots. We are not in accord with defendants' claim that a separate item "Reserve for bond issue—$60,000," the only item on which defendants rely, can properly be considered to be an appropriation to pay for off-street parking lots. Inasmuch as the provisions authorizing the bond issue were subsequently eliminated by the electors at the referendum, we consider that the item "Reserve for bond issue" became ineffective as an appropriation, its purpose having been eliminat-

ed. There was no provision in the budget adopted by the commission for the fiscal year 1951–1952 to establish any appropriation to pay for off-street automobile parking facilities.

There was, however, in the city treasury, an unappropriated and unexpended sum of about $40,000, the residue from a veterans housing fund. This project had been abandoned by the city, leaving this balance on hand. Did the city commission, without any provision in the budget for 1951–1952 appropriating this fund for any purpose, have the authority, under the provisions of the city charter, to use this unexpended balance, to pay for off-street parking facilities? In other words, what are the requirements of the city charter authorizing appropriations and expenditures of money for municipal purposes, and were they complied with by the commission when it attempted to use this fund for off-street parking lots?

Sections 134–138, which apply to the city's annual budget and appropriations, were put into the city charter at various times by referendums. Each fiscal year begins on July 1st. Not less than 45 days prior thereto, they require the city manager to submit to the commission an estimate of expenditures and revenues for the ensuing fiscal year and make recommendations. On receipt thereof, the commission is required to prepare a resolution, to be known as the annual budget, but before adopting it is required to fix a time and place for a hearing, give notice thereof, and hold a public hearing. Section 135 provides:

"The city commission shall not pass the budget until 5 days after such public hearing. The budget shall be adopted not later than 30 days prior to the first day of the ensuing fiscal year."

Under section 136 of the charter, the commission may transfer certain funds, and under this section the defendants seek to justify the transfer of the veterans housing fund to the general fund and the use of it to pay for off-street parking lots. But the commission, under this section, may transfer only an unencumbered balance of any appropriation "to a purpose for which the appropriation for the current year has proven insufficient or may authorize a transfer to be made between items appropriated to the same fund."

As we have seen, there was no appropriation, insufficient or otherwise, to a fund to pay for off-street parking facilities in the fiscal year 1951–1952; and absent such an appropriation, section 136 would not apply.

Section 137 of the charter requires that:

"The city commission shall specify in the annual budget the purposes for which such appropriations are made, the amount appropriated for each purpose and the general or special funds for which appropriated. It shall also designate in such budget all sums which may be required to be levied or reassessed with the next general tax and the disposition to be made of such moneys, and it shall at the same time levy the aggregate of the taxes mentioned in such budget upon the taxable property of the city."

Section 138 of the charter declares that after the annual budget is passed no liability shall be incurred for any purpose which cannot be paid out of the current revenues for the fiscal year (or out of proceeds of bonds—not applicable here).

The annual budget adopted for 1951–1952 shows no indication of any appropriation for the purpose of acquiring off-street parking facilities.

The defendants contend, and the trial court so held, that no such appropriation is necessary since

the statute (CL 1948, § 141.161 [Stat Ann 1949 Rev § 5.2426(1)]), provides that a city may acquire and operate parking facilities. In other words, the mere fact that a municipality has authority to acquire property for a public purpose would be the only requirement necessary to authorize the expenditure of public funds for any such purpose, without compliance with charter provisions for the appropriation and expenditure of public funds. The Jackson city charter contains provisions for adopting an annual budget and making appropriations. To state that an appropriation is unnecessary because the purpose was lawful would deny the necessity for complying with such city charter provisions. If this contention were carried to its logical conclusion, it would mean that the city commission could do anything that was within its powers without having included an appropriation for it in its budget, or making an appropriation therefor in accordance with the charter requirements; and thereby deny the public any opportunity, which the charter requires, to hear or object to such use of public moneys. That would not be within either the spirit or the express provisions of the Jackson city charter.

Where the charter of the municipality provides that there must be an authorized appropriation of public funds to justify an expenditure thereof, such expenditure is unlawful in the absence of such an appropriation in accordance with the law, in this instance the city charter. *Savidge* v. *Village of Spring Lake,* 112 Mich 91; *Bay City Traction & Electric Co.* v. *Bay City,* 155 Mich 393, 402; *Salzer* v. *City of East Lansing,* 263 Mich 626.

The city relies on *City of Pontiac* v. *Ducharme,* 278 Mich 474; *Morley Brothers* v. *Township of Carrollton,* 305 Mich 285; *DiPonio* v. *City of Garden City,* 320 Mich 230, and like decisions, where bond issues had been approved, authority granted, and

appropriations made. In none of them was it made to appear that decision depended upon whether a charter provision required a specific appropriation in order to justify the expenditure of public money. The precise issue in the instant case is whether the city may expend public funds without an appropriation made therefor and in accordance with the express provisions of its charter. The answer is no.

Appellees point out that the city's fiscal year 1951–1952 has now elapsed, and suggest that the Court "must take his [plaintiff's] bill as it finds it in the light of the changed circumstances which must be presumed to have flowed from the adoption of a new budget and the inception of a new fiscal year." It should not be necessary for the Court to point out that the Court takes the case as it has been submitted, on the record and briefs; and, in the absence of a motion here pending appeal, a supplemental record or a remand to the trial court, we do not consider *presumable* subsequent changed circumstances which are not before the Court. The question involved in this case is whether the city commission had the power to use unappropriated public funds to acquire lots for off-street automobile parking, contrary to express provisions of the city charter, after authority to issue revenue bonds for that purpose has been voted out of the ordinance on a referendum to the electorate. An appropriation of public funds in accordance with the charter, to pay for off-street parking lots was necessary. No such appropriation was made. While the city may legally appropriate public funds to pay for off-street parking facilities by compliance with the charter, this was not done, according to the record before us.

On August 1, 1951, after the petitions had been filed requiring the submission of ordinance 223 to a referendum, the city commission adopted a resolution transferring a part of the veterans housing

fund, hereinbefore referred to, from said fund to the general fund, and authorizing its expenditure to pay for the acquisition of 2 of the off-street parking lots referred to in said ordinance. As hereinbefore stated, without an appropriation of this fund after an opportunity had been given the public to consider or object to the same as required by the charter, such attempted transfer and appropriation was outside the powers of the city commission.

We conclude that the city commission did not comply with the provisions of the city charter in appropriating the veterans housing fund or the funds received for on-street parking to pay for off-street parking facilities. Its powers in that regard are circumscribed and limited by the city charter. A decree may be entered in this Court accordingly.

Reversed, without costs, a public question being involved.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.