MICHIGAN EDUCATION ASSOCIATION v SECRETARY OF STATE

Docket No. 280792. Submitted May 7, 2008, at Lansing. Decided August 28, 2008, at 9:05 a.m. Leave to appeal sought.

The Michigan Education Association (MEA) sought a declaratory ruling by the Secretary of State that a payroll deduction by the Gull Lake Public Schools for employee contributions to MEA-PAC, a political action committee of the MEA, pursuant to the terms of a collective-bargaining agreement between the Kalamazoo County Education Association/Gull Lake Education Association and the Gull Lake Public Schools and for which the MEA would reimburse the Gull Lake Public Schools in advance for the cost of administering the payroll-deduction plan, does not violate § 57 of the Michigan Campaign Finance Act (MCFA), MCL 169.257. Section 57 prohibits a public body from using or authorizing the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to, among other things, make a contribution or expenditure. The Secretary of State declared that the payroll-deduction plan in question is violative of § 57 of the MCFA. The MEA petitioned the Ingham Circuit Court for judicial review of the declaratory ruling. The court, Thomas L. Brown, J., determined that the declaratory ruling was arbitrary, capricious, and an abuse of discretion, concluding that no expenditure is made by the Gull Lake Public Schools when it receives advance reimbursement of the cost of administering the payroll-deduction plan. The Secretary of State appealed by leave granted.

The Court of Appeals *held*:

Section 6(1) of the MCFA, MCL 169.206(1), defines "expenditure" as "a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question." The Secretary of State has interpreted the term "expenditure" to include the costs associated with collecting and delivering contributions to a political action committee by payroll deduction, and that interpretation is not contested in this case. Reimbursement of the cost of a payroll-

deduction plan for contributions to a political action committee does not prevent a prohibited expenditure from occurring.

Reversed.

WHITBECK, J., dissenting, stated that the cost of collecting and delivering payroll deductions for contributions of members of the MEA affiliate to the MEA-PAC are not an expenditure under the MCFA. Section 6(2)(c) of the MCFA, MCL 169.206(2)(c), defines "expenditure" to exclude an expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee like the MEA-PAC. Thus, the cost of the payroll-deduction plan at issue cannot be an unlawful expenditure because it is not an expenditure in the first place. The parties should brief, and the Court of Appeals should decide, whether a payroll deduction by a public body constitutes a "contribution" as the MCFA defines that term and whether public bodies such as schools boards, like the Gull Lake Public Schools, have the authority to collect and deliver payroll deductions for contributions by members of a labor union to the union's political action committee.

ELECTIONS — MICHIGAN CAMPAIGN FINANCE ACT — CONTRIBUTIONS TO POLITICAL ACTION COMMITTEES — PUBLIC BODIES — PAYROLL-DEDUCTION PLANS.

A public body makes an expenditure that is prohibited by the Michigan Campaign Finance Act if it administers a payroll-deduction plan for voluntary employee contributions to a political action committee regardless of whether it receives reimbursement for the administrative cost of such a plan (MCL 169.206[1], 169.257).

*White, Schneider, Young & Chiodini, P.C.* (by *Kathleen Corkin Boyle*), for the Michigan Education Association.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Patrick J. O'Brien, Denise C. Barton, Heather S. Meingast*, and *Ann M. Sherman*, Assistant Attorneys General, for the Secretary of State.

Amici Curiae:

*Foster, Swift, Collins & Smith, PC* (by *Eric S. Doster*), for the Michigan Chamber of Commerce.

*Sachs Waldman, P.C.* (by *Andrew Nickelhoff*), for the Michigan State AFL-CIO and Change to Win.

*Patrick J. Wright* for the Mackinac Center for Public Policy.

*Alfred H. Hall* and *Michael G. O'Brien* for the Senate Majority Leader, the Senate Majority Floor Leader, and the Senate Campaign and Oversight Committee Chairwoman.

Before: WILDER, P.J., and O'CONNELL and WHITBECK, JJ.

O'CONNELL, J. Respondent Secretary of State appeals by leave granted the trial court order setting aside as arbitrary and capricious respondent's declaratory ruling interpreting § 57 of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.* We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

#### A. THE PARTIES

##### 1. THE SECRETARY OF STATE

The respondent-appellant in this matter is the Secretary of State (the Secretary). The position of Secretary of State is an elective office under the Michigan Constitution. See Const 1963, art 5, § 21. The Secretary is the single executive heading the Department of State (the Department). See Const 1963, art 5, § 3. The Department of State is one of the principal departments in the executive branch of state government. See MCL 16.104(1). The Secretary has certain duties and responsibilities, see MCL 11.4 *et seq.*, including the administration of the MCFA, MCL 169.215. Under the MCFA, MCL 169.215(1)(e), and under the Administrative Procedures Act, MCL 24.263, the Secretary of State may

issue "a declaratory ruling as to the applicability to an actual state of facts of a statute."

## 2. THE MEA

The petitioner-appellee in this matter is the Michigan Education Association (MEA). The MEA is a voluntary, incorporated labor organization that in August 2006 represented some 136,000 members employed by public schools, colleges, and universities throughout Michigan. The MEA's MEA-PAC is a separate segregated fund under § 55 of the MCFA, MCL 169.255. According to the MEA: MEA-PAC is funded in part by MEA member payroll deductions; the MEA or its affiliates have entered into collective bargaining agreements with various public school districts throughout the state; some of those collective bargaining agreements, including the agreement between the Kalamazoo County Education Association/Gull Lake Education Association (presumably affiliates of the MEA) and the Gull Lake Public Schools, include a requirement that the school district employer administer a payroll deduction plan for contributions to MEA-PAC; the Gull Lake collective bargaining agreement also requires the Gull Lake Public Schools to make other payroll deductions, such as the payment of MEA dues and service fees; and in 2006, it proposed that it pay the Gull Lake Public Schools, in advance, for all anticipated costs of Gull Lake Public Schools attributable to administering payroll deductions to MEA-PAC or any other separate segregated fund affiliated with the MEA. The MEA contends that under this proposal, Gull Lake Public Schools would not incur any costs or expenses in administering the requested deductions,

because the Gull Lake Public Schools would be reimbursed, in advance, for such costs and expenses.

### 3. THE AMICI

Various entities and persons have filed helpful briefs amicus curiae in this matter. They are the Mackinac Center for Public Policy, the Michigan State AFL-CIO and Change to Win, the Michigan Chamber of Commerce, and Senate Majority Leader Michael D. Bishop, Senate Majority Floor Leader Alan Cropsey, and Senator Michelle McManus, Chairwoman of the Senate Campaign and Election Oversight Committee.

### B. THE MEA'S REQUEST FOR DECLARATORY RULING

On August 22, 2006, the MEA filed a request for a declaratory ruling by the Secretary. The MEA detailed the facts concerning the Gull Lake Public Schools summarized above and asserted that the administration of the payroll deductions by the school district did not "constitute an 'expenditure' under the MCFA" and did not constitute a violation of § 57 of the MCFA, MCL 169.257. The MEA then requested a declaratory ruling on three questions:

1. May the Gull Lake Public Schools continue to make and transmit to MEA-PAC the payroll deductions requested by MEA members through a properly completed, voluntary consent form?

2. May the Gull Lake Public Schools, consistent with the provisions of the MCFA, administer the payroll deductions to MEA-PAC if either the MEA or MEA-PAC pays the school district, in advance, for any costs associated with administering those payroll deductions?

3. What costs should be considered by the Gull Lake Public Schools in determining the costs attributable to

administering the payroll deductions that are to be trans-
mitted to the PAC [political action committee]?

### C. THE SECRETARY'S DECLARATORY RULING

On November 20, 2006, the Secretary issued her
declaratory ruling in response to the MEA's request.
Regarding the MEA's first question, the Secretary
noted that the Department of State and the Attorney
General had both concluded that a public body is
prohibited from collecting and remitting contribu-
tions to a "committee" through its administration of
a payroll deduction plan. The Secretary noted that
§ 55 of the MCFA allowed the named private entities
to make "expenditures" for the establishment and
administration and solicitation of contributions to a
separate segregated fund to be used for political
purposes. However, citing § 55(1) and § 57, the Sec-
retary went on to note that "no corresponding provi-
sion authorizes a public body to do so." The Secretary
stated that "[t]he Department is constrained to con-
clude that the school district is prohibited from
expending government resources for a payroll deduc-
tion plan that deducts wages from its employees on
behalf of MEA-PAC."

Regarding the MEA's second question, the Secretary
stated that the Department was mindful of the Attor-
ney General's recent conclusion that

> a violation [of § 57] could not be avoided by requiring the
> union to pay the anticipated costs before they are
> incurred. The language of MCL 169.257(1) unqualifiedly
> prohibits the use of public resources for the described
> purposes, making no exception for compensated uses.
> [OAG, 2005-2006, No 7187, p 81 (February 16, 2006).]

The Secretary stated that this opinion was consis-
tent with the Department's previous position, citing

several previous interpretative statements, and that the Department saw no reason to depart from this rationale. The Secretary also concluded that it was unnecessary to address the MEA's third question, given her response to the first and second questions.

### D. THE TRIAL COURT'S DECISION

The MEA filed in the Ingham Circuit Court a petition for review challenging the Secretary's declaratory ruling.[1] On September 4, 2007, the trial court issued its opinion setting aside the Secretary's declaratory ruling. The trial court summarized the Secretary's declaratory ruling and stated: "This means that unions cannot take voluntary payroll deductions from their member employees and contribute those funds to PACs established by the unions, if the employees in the union work for a public body."

After stating the standard of review contained in the Administrative Procedures Act, MCL 24.306(1),[2] the provisions of § 57 of the MCFA, and the positions of the parties, the trial court determined that the Secretary's declaratory ruling was "arbitrary, capricious, and an abuse of discretion." The trial court concluded that under the plain language of § 57, the administration of payroll deductions to a union PAC constitutes an "expenditure" under the MCFA. The trial court then stated:

> However, where the costs of administration are reimbursed, no transfer of money to the union PAC occurs, and therefore an "expenditure" has not been made within the meaning of the MCFA. Thus, a public body may administer payroll deductions so long as all costs of making deductions

---

[1] "A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case." MCL 24.263.

[2] See also Const 1963, art 6, § 28.

are reimbursed by the PAC. § 57 does not explicitly prohibit a public body from administering the payroll deduction requests of its employees.

The trial court also disagreed with the Secretary's assertion that her declaratory ruling was consistent with past rulings and statements. While the trial court agreed with the Secretary that she is free to make prospective changes in the course and direction of the declaratory rulings, it stated that such changes "must not be arbitrary, capricious, or in violation of any other law." The trial court concluded that the Secretary made such an arbitrary change when she issued her declaratory ruling. The trial court then held that public bodies, such as the Gull Lake Public School system, may "administer payroll deductions requested by their employees, provided that all expenses of making the deductions are borne by the PAC or its sponsoring labor organization and are paid in advance."

### E. THE SECRETARY'S APPEAL

On September 27, 2007, the Secretary filed an application for leave to appeal the trial court's decision, and on December 19, 2007, a panel of this Court granted that application. In her brief on appeal, the Secretary outlined the question involved as follows:

> The Secretary of State issued a declaratory ruling that § 57 of the Michigan Campaign Finance Act prohibits a school district, as a public body, from administering a payroll deduction plan on behalf of a union's political action committee and that a violation could not be remedied by a union's reimbursement of the costs associated with administering such a plan. On appeal, the circuit court found that the plain language of § 57 prohibited the administration of payroll deductions by a union political action committee, but that where the costs of administration are reimbursed in advance, a violation does not occur.

Was the circuit court correct in finding that the declaratory ruling by the Secretary of State was arbitrary, capricious, and an abuse of discretion?

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998).

[A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute. While the agency's interpretation may be helpful in ascertaining the legislative intent, courts may not abdicate to administrative agencies the constitutional responsibility to construe statutes. Giving uncritical deference to an administrative agency would be such an improper abdication of duty. [*In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).]

## III. STATUTORY INTERPRETATION

MCL 169.257(1) provides, in pertinent part:

A public body[3] or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a).

The MCFA defines "expenditure" as "a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate,

---

[3] There is no dispute that a school district is a public body and, therefore, governed by MCL 169.257.

or the qualification, passage, or defeat of a ballot question." MCL 169.206(1). "[W]hen a statute specifically defines a given term, that definition alone controls." *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). The Secretary previously issued an interpretive statement indicating that "the department interprets the term 'expenditure' to include the costs associated with collecting and delivering contributions to a committee" and that "[a] payroll deduction system is one method of collecting and delivering contributions." Interpretative Statement to Mr. Robert LaBrant (November 14, 2005).

None of the parties appears to question this interpretation.[4] Rather, as stated above, the sole issue before us is whether, under the MCFA, advance reimbursement for the costs of a payroll deduction system prevents what is otherwise an illegal expenditure from ever becoming an "expenditure." We conclude that it does not. We find nothing in the plain language of the MCFA that indicates reimbursement negates something that otherwise constitutes an expenditure. This Court presumes that the Legislature intended the meaning clearly expressed in unambiguous statutory language, and no further construction is required or allowed. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). We note that although MCL 169.204(3)(c) provides that "[a]n offer or tender of a contribution, if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt" is not a contribution, MCL 169.206(2)(e) provides that only rejection and return prevent an expenditure and does not permit

---

[4] In fact, the trial court and the appellate briefs concede that an expenditure has occurred absent the asserted magical effects of prior reimbursement.

"refund." "[N]othing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999). We may not assume that the omission of the term "refund" from MCL 169.206(2)(e) was inadvertent. *South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich 518, 530; 734 NW2d 533 (2007).

We also conclude that reimbursement, advance or otherwise, does not prevent an otherwise illegal expenditure from ever becoming an expenditure because "there is no transfer of value." Contrary to the trial court's reasoning, a transfer of value has occurred because there is time spent by employees that monetary reimbursement cannot return. For example, it takes employees to distribute voluntary payroll deduction forms, receive the signed forms, make certain the forms conform to legal requirements, enter the information into the payroll system, and update the information yearly. Although monetary reimbursement can compensate the school district for the salary paid for the time spent by the employees performing those functions, the time spent on non-school district business is irretrievably lost and cannot be recovered. This work constitutes a transfer of value for which monetary reimbursement is insufficient. Accordingly, reimbursement does not prevent an expenditure from occurring. The trial court erred by concluding that reimbursement prevents an expenditure from occurring, and its declaratory ruling was arbitrary and capricious.

### IV. ADDITIONAL ISSUES

The dissent raises two issues that were not set forth in the statement of questions presented on appeal, nor were they raised by any of the nine parties or amici in

their briefs or at oral argument. We are not obligated to consider issues not properly raised and preserved or those that were first raised on appeal, *People v Stanaway*, 446 Mich 643, 694; 521 NW2d 557 (1994); *Booth Newspapers, Inc v University of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993), and we generally do not consider any issues not set forth in the statement of questions presented, *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). We, therefore, decline to address them because they are not properly before us. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Although the dissent's legal argument may "have substantive merit, it can be of no avail [because each of the parties and amici] failed to raise the issue in a timely fashion." *Forton v Laszar*, 463 Mich 969, 970 (2001) (CORRIGAN, C.J., concurring).[5]

If the parties wish to make arguments to resolve these "other issues," they are free to file a separate lawsuit.

---

[5] The dissent's description of the MCFA as a "self-contained looking-glass" full of circus type mirrors may be accurate. However, in light of the MCFA prohibitions, we believe that the dissent "has traveled one mirror too far." Unlike § 55 for corporations, § 57 does not authorize a public body to make expenditures to establish, administer, or solicit "contributions" for a management PAC, nor is there authorization to administer a payroll deduction plan for "contributions" to a separate segregated fund. Absent such authorization, school districts are prohibited from engaging in the political process. In our opinion, the prohibition on expenditures and contributions, coupled with the absence of express permission for a payroll deduction plan, should end the discussion.

We concede that the Legislature may have the authority to allow public bodies to engage in some limited form of partisan politics. However, until the Legislature explicitly makes such a pronouncement, courts should be reluctant to allow public bodies to engage in any form of politics. Sincere advocates can read self-contained looking-glass legislation and reach different results, but it is beyond question that the intent of this legislation was to prevent taxpayer funded public bodies from engaging in partisan politics. In our view, the methodological manner in which the dissent interprets the MCFA turns the statute upside down and inside out, resulting in permission for that which the statute was intended to prevent.

However, this Court should not sua sponte create issues on appeal and then remand to the trial court for a determination of those issues, or request additional briefing to dispose of the issues for the first time on appeal.[6]

We reverse the circuit court's order. We do not retain jurisdiction.

WILDER, P.J., concurred.

WHITBECK, J. (*dissenting*). I respectfully dissent. The majority posits the issue before us as whether under the

---

[6] If we were to address the dissent's issues, we would still reverse. The MCFA treats public entities and private entities differently. Compare MCL 169.254 with 169.257. Given this differential treatment, we would conclude that the allocated costs of collecting and delivering payroll deductions by members of the MEA affiliate to the MEA-PAC are both an expenditure and a contribution to the MEA-PAC by the Gull Lake Public Schools. See OAG, 2005-2006, No 7187, p 81 (February 16, 2006) (concluding that "[a] public body's use of its resources to administer the payroll deduction plan would 'cause' the contribution to 'happen,' and thus violate section 57").

Under our system of government, public bodies should not participate in the political process. To effectuate this, our Legislature prohibited them from making "expenditures" and "contributions." MCL 169.257(1). Over time, the prohibition became more detailed, and now includes "the use or authoriz[ation of] the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure . . . ." *Id.* Numerous Attorney General opinions have made this proposition clear. See, e.g., OAG, 1993-1994, No 6763, p 45 (August 4, 1993) ("School districts may not permit their offices and phone equipment to be used in a restrictive manner for advocacy of one side of a ballot issue . . . . School districts may not endorse a particular candidate or ballot proposal."); OAG, 1965-1966, No 4291, p 1 (January 4, 1965) (school district not allowed to spend funds to advocate a favorable vote on a tax and bond ballot proposal). Given the consistency with which the MCFA has been interpreted to prohibit public bodies from spending public funds or otherwise utilizing public resources paid for by all taxpayers to advocate for a particular political position or candidate, it is absolutely illogical, inconsistent, and contrary to the very purpose of MCL 169.257 to conclude that it is permissible for a school district (a public body) to administer payroll deductions sent to MEA-PAC (a group whose very purpose is to advocate for various political positions and candidates).

Michigan Campaign Finance Act (MCFA) "advance reimbursement for the costs of a payroll deduction system prevents what is otherwise an illegal *expenditure* from ever becoming an 'expenditure.' "[1] The majority concludes it does not. I disagree. Under the particular, and peculiar, definitions contained in the self-contained looking-glass[2] world of the MCFA, the costs of such payroll deduction systems are not "expenditures" at all. Thus, the trial court reached the right result, although for the wrong reason. I would affirm the trial court on the basis that the allocated costs of administration by the Gull Lake Public Schools, for example, for collecting and delivering payroll deductions for "contributions" by members of the Michigan Education Association (MEA) affiliate to the MEA-PAC do not constitute an "expenditure" *as the MCFA defines that word.*

In my view, however, that should not end the inquiry; it should only begin it. As a separate and distinct matter, I would ask the parties to brief the questions (1) whether, using the situation at the Gull Lake Public Schools as an example, the allocated costs of collecting and delivering payroll deductions by members of the MEA affiliate to the MEA-PAC are a *contribution* to the MEA-PAC by the Gull Lake Public Schools as the MCFA defines contributions and, if so, whether such costs are a prohibited contribution under § 57 of the MCFA; and (2) whether public bodies such as school boards, like the Gull Lake Public Schools, have the *authority* to collect and deliver payroll deductions for contributions by members of a union to that union's PAC. I would then decide these issues in a timely and comprehensive opinion.

---

[1] Emphasis added.

[2] " 'When I use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.' " Lewis Carroll, *Through the Looking Glass* (1872).

### I. INTRODUCTION

This case involves the application of certain provisions of the MCFA.[3] The MCFA is a comprehensive, wide-ranging statute and has been the subject of a number of interpretations, declarations, and opinions by the Secretary of State, the Attorney General, and various state and federal courts. It contains a multitude of prohibitions, authorizations, delineations, limitations, and other provisions applicable only to a self-contained looking-glass world, that of campaign finance. To extend the metaphor, behind the looking glass lies a bewildering and Byzantine hall of mirrors. It is therefore of considerable importance to understand the general "architecture" of the MCFA as it relates to the issues in this case, to identify the provisions of the MCFA that are relevant here, and then to apply these provisions to the facts as the parties have presented them to this Court.

### II. THE ARCHITECTURE OF THE MCFA

#### A. SECTION 54 PROHIBITION ON CORPORATE CONTRIBUTIONS AND EXPENDITURES

As a starting point, I emphasize that § 54 of the MCFA,[4] with certain important exceptions, broadly prohibits corporations, joint stock companies, domestic dependent sovereigns,[5] and labor organizations, as well as those acting for such entities, from making "a contribution or expenditure or provid[ing] volunteer

---

[3] MCL 169.201 *et seq.*

[4] MCL 169.254.

[5] Defined as Indian tribes that have been acknowledged, recognized, restored, or reaffirmed as an Indian tribe by the Secretary of the Interior under the Indian Reorganization Act or have otherwise been acknowledged by the United States government as an Indian tribe. See MCL 169.205(1).

personal services that are excluded from the definition of a contribution pursuant to [MCL 169.204(3)(a)]."

First, as a housekeeping matter, I observe that this matter does not involve "volunteer personal services." Rather, this Court is concerned here with "contributions" and "expenditures" as the MCFA defines those words.

Second, as a point of interest, the MEA asserts that it is "a voluntary *incorporated* labor organization."[6] Both as a corporation and a labor organization, therefore, the MEA cannot make a "contribution" or an "expenditure" as the MCFA defines those words. But a corporation that is not a labor organization, such as General Motors for example, also cannot make a "contribution" or an "expenditure" as the MCFA defines those words. Thus, in the MCFA's self-contained looking-glass world of campaign finance, § 54 now treats corporations, joint stock companies, domestic dependent sovereigns, and labor organizations exactly alike with respect to its broad prohibition against "contributions" and "expenditures."

Thirdly, however, there are several exceptions to § 54's broad prohibitions. These exceptions are contained in the first sentence of § 54(1):

> Except with respect to the exceptions and conditions in subsections (2)[7] and (3)[8] *and section 55*,[9] and to loans made in the ordinary course of business, a corporation, joint stock company, domestic dependent sovereign, or labor organization shall not make a contribution or expenditure . . . .[10]

---

[6] Emphasis added.

[7] MCL 169.254(2).

[8] MCL 169.254(3).

[9] MCL 169.255.

[10] MCL 169.254(1) (emphasis added).

Neither the exceptions and conditions in § 54(2)[11] nor the exceptions and conditions in § 54(3)[12] are directly relevant here. Nor are loans in the ordinary course of business. But the exception related to § 55[13] *is* directly relevant. I will cover § 55 below; it is sufficient here only to note that under § 54, the exceptions and conditions in § 55 constitute an *exception* to the broad prohibition against "contributions" and "expenditures," as the MCFA defines those terms, by the named private entities (that is, corporations, joint stock companies, domestic dependent sovereigns, and labor organizations).

Finally, I observe that § 54 covers only the named private entities. There is an absolutely deafening silence in § 54 with respect to public bodies, such as school districts. Generally speaking, this is understandable. This Court does not expect public bodies to participate in the political process and certainly not by the way of making "expenditures" and "contributions."[14]

B. "CONTRIBUTIONS" AND "EXPENDITURES"

To find one's way through the MCFA's hall of mirrors, one must understand and use its definitions, particularly the definitions of "contributions"[15] and "expenditures."[16] I have summarized these definitions below:

---

[11] MCL 169.254(2).

[12] MCL 169.254(3).

[13] MCL 169.255.

[14] See, e.g., OAG, 1993-1994, No 6763, p 45 (August 4, 1993) ("School districts may not permit their offices and phone equipment to be used in a restrictive manner for advocacy of one side of a ballot issue . . . . School districts may not endorse a particular candidate or ballot proposal."); OAG, 1965-1966, No 4291, p 1 (January 4, 1965) (school district not allowed to spend funds to advocate a favorable vote on a tax and bond ballot proposal).

[15] MCL 169.204.

[16] MCL 169.206.

| "Contributions" | "Expenditures" |
|---|---|
| " 'Contribution' means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."[17]<br><br>But a "contribution" does not include "volunteer personal services," "[f]ood and beverages, . . . which are donated by an individual," or "[a]n offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt."[18] | " 'Expenditure' means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question."[19]<br><br>But an expenditure does not, among other things, include "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee."[20] |

I make four observations based on these definitions. First, I observe that the definitions are all encompassing within the self-contained looking-glass world of campaign

[17] MCL 169.204(1).

[18] MCL 169.204(3).

[19] MCL 169.206(1).

[20] MCL 169.206(2)(c).

finance. To some extent the definitions are also parallel, and perhaps even somewhat overlapping. In the case of a "contribution," the definition covers any type of payment[21] to influence the "nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." In the case of an "expenditure," the definition covers not only payments but also donations, loans, and promises of the payment of money or anything of ascertainable monetary value for "goods, materials, services, or facilities" "in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question."

Second, I observe that the definition of a "contribution" is subject to several exceptions, none of which is relevant here.[22]

Third, I observe that the definition of an "expenditure" is also subject to a number of exceptions, one of which is directly relevant here. Under that exception, an "expenditure" for the "establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee" is *not* an "expenditure" for the purposes of the MCFA.[23]

Fourth, I observe that there is no indication in the definitions of "expenditure" and "contribution" that either definition is limited to the named private entities in § 55.

---

[21] Including "the full purchase price of tickets or payment of an attendance fee for events such as dinners, luncheons, rallies, testimonials, and other fund-raising events; an individual's own money or property other than the individual's homestead used on behalf of that individual's candidacy; the granting of discounts or rebates not available to the general public; or the granting of discounts or rebates by broadcast media and newspapers not extended on an equal basis to all candidates for the same office; and the endorsing or guaranteeing of a loan for the amount the endorser or guarantor is liable." MCL 169.204(2).

[22] See MCL 169.255(3).

[23] MCL 169.206(2)(c).

C. SECTION 55 AND AUTHORIZED ACTIVITIES FOR PRIVATE ENTITIES

Section 55 of the MCFA[24] *authorizes* the named private entities (that is, corporations, either for profit or nonprofit, joint stock companies, domestic dependent sovereigns, and labor organizations) to make "expenditures" for the establishment and administration and solicitation of "contributions" for separate segregated funds to be used for political purposes. Again, then, § 55 is an important *exception* to § 54's broad prohibition against such named private entities making either "contributions" or "expenditures" as defined in the MCFA. With respect to separate segregated funds, therefore, the named private entities can make "expenditures" for the establishment, administration, and solicitation of "contributions" to such separate segregated funds. But § 55, in turn, expressly *limits* such separate segregated funds to making "contributions" to and "expenditures" on behalf of another set of named entities: "candidate committees, ballot question committees, political party committees, political committees, and independent committees."[25]

I observe that the term "political action committee" (PAC) is not defined in the MCFA. It comes from federal election law[26] and, according to the Secretary, is a term of art that has gained common acceptance and usage to describe independent committees or political committees, apparently including separate segregated funds, established under the MCFA to support or oppose candidates. According to the MEA, the MEA-PAC is a separate segregated fund and has regularly filed with the Secretary of State the campaign finance reports required by the MCFA.[27]

---

[24] MCL 169.255.

[25] MCL 169.255(1).

[26] See, generally, 2 USC 431(4).

[27] See MCL 169.224.

Section 55 also *delineates* those who can be solicited for "contributions" to a separate segregated fund to the following persons or their spouses:

| For Profit/Joint Stock Company | Nonprofit | Labor Organization |
| --- | --- | --- |
| Stockholders of the corporation or company; officers and directors of the corporation or company; and employees of the corporation or company who have "policy making managerial, professional, supervisory, or administrative nonclerical responsibilities."[28] | Members of the corporation who are individuals; stockholders of members of the corporation; officers or directors of members of the corporation; employees of the members of the corporation who have "policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities"; and employees of the corporation who have "policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities"[29] | Members of the labor organization who are individuals; officers or directors of the labor organization; and employees of the labor organization who have "policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities."[30] |

Section 55 also has one further *authorizing* provision. This provision states:

---

[28] MCL 169.255(2).

[29] MCL 169.255(3).

[30] MCL 169.255(4). See also MCL 169.255(5) relating to domestic dependent sovereigns.

A corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization *may solicit or obtain contributions for a separate segregated fund* established under this section from an individual described in subsection (2), (3), (4), or (5) *on an automatic basis, including but not limited to a payroll deduction plan, only if the individual who is contributing to the fund affirmatively consents to the contribution at least once in every calendar year.*[31]

Thus, in the § 55 private arena, automatic payroll deduction plans for obtaining "contributions" to a separate segregated fund are permissible only if the delineated individuals in § 55(2) (for corporations and joint stock companies),[32] § 55(3) (for nonprofit corporations),[33] and § 55(4) (for labor organizations)[34] who make "contributions" affirmatively consent to the payroll deduction of such "contributions" at least once in every calendar year.

But the § 55 private arena encompasses *only* the named private entities under that section: for-profit and nonprofit corporations, joint stock companies, domestic dependent sovereigns, and labor organizations. Thus, § 55 deals only with private entities. It is silent with respect to public bodies, such as school districts. However, § 57 of the MCFA[35] deals directly with such public bodies.

#### D. SECTION 57 AND PROHIBITED ACTIVITIES FOR PUBLIC BODIES

In contrast to § 55, § 57 of the MCFA is a *prohibitive* provision; it does not authorize a public body to do

---

[31] MCL 169.255(6) (emphasis added).

[32] MCL 169.255(2).

[33] MCL 169.255(3).

[34] MCL 169.255(4).

[35] MCL 169.257.

anything. Rather, § 57 provides, with certain exceptions not relevant here,[36] that a public body, or an individual acting for a public body, shall *not* "use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure . . . ."[37]

Second, § 57 uses the term "public body." This is also a defined term under the MCFA. It includes state agencies,[38] the Legislature or an agency of the legislative branch of state government,[39] and "[a] county, city, township, village, intercounty, intercity, or regional governing body; a council, *school district,* special district, or municipal corporation; or a board, department, commission, or council or any agency of a board, department, commission, or council."[40]

The term "public body" also includes "[a]ny other body that is created by state or local authority or is primarily funded by or through state or local authority, which body exercises governmental or proprietary authority or performs a governmental or propriety function."[41]

Third, there is *no* counterpart in § 57 to the provision in § 55 that authorizes the named private entities (that is, for-profit or nonprofit corporations, joint stock companies, and labor organizations) to make "expenditures" for the establishment and administration and solicitation of "contributions" to separate segregated funds. Thus, a public body, such as a state agency or a

[36] See MCL 169.257(1)(a) through (f).

[37] MCL 169.257(1).

[38] MCL 169.211(6)(a).

[39] MCL 169.211(6)(b).

[40] MCL 169.211(6)(c) (emphasis added).

[41] MCL 169.211(d).

school district, is *not* authorized under § 57 to make "expenditures" to establish, administer, or solicit "contributions" for a management PAC. Labor organizations may arguably utilize their authority under § 55 to establish and administer union PACs (such as the MEA-PAC). But in situations where the members of the labor organization are employees of a public body, there can be, and are, no side-by-side management PACs because there is no authorization in the MCFA or elsewhere for a public body to establish or administer a management PAC. It would be incongruous, and indeed illegal, for a public body, such as a school district, to use public resources to establish, administer, and solicit "contributions" for its own management PAC to be used for political purposes. Indeed, the Michigan State AFL-CIO and Change to Win state that it is "well-established" that public bodes may not establish, administer, or solicit contributions to their own separate segregated funds.

Fourth, and as an extension of the above, there is no counterpart in § 57 to the authorization in § 55[42] for automatic payroll deduction plans to obtain "contributions" to a separate segregated fund when the delineated individuals who make such "contributions" affirmatively consent to the payroll deduction of such "contributions" at least once in every calendar year.

### E. CONCLUSIONS

I conclude that § 54 of the MCFA prohibits the named private entities (that is, corporations, joint stock companies, domestic dependent sovereigns, and labor organizations) from making "expenditures" and "contributions" as the MCFA defines these terms. But there are

---

[42] MCL 169.255(6).

important qualifications to this conclusion. First, there are several exceptions to § 54's overall prohibitions, including § 55's authorized "expenditures" for the establishment, administration, and solicitation of "contributions" to separate segregated funds. Second, § 54's prohibitions extend only to a specific set of named *private* entities. That set does not include public bodies, such as school districts.

I also conclude that the MCFA contains a number of definitions that are applicable in the self-contained looking-glass world of campaign finance, including the definitions of the word "contribution" and the word "expenditure." Most importantly, the MCFA states that the definition of "expenditure" does *not* include the "establishment, administration, or solicitation of contributions" to a separate segregated fund. Therefore, to the extent that there are costs involved in the establishment, administration, or solicitation of "contributions" to a separate segregated fund, those costs are *not* "expenditures" as the MCFA defines that word. This is true whether the entity involved is private or public.

I further conclude that § 55 does four things. It *authorizes* the named private entities to undertake certain activities, including the making "of expenditures" for the establishment, administration, and solicitation of "contributions" to separate segregated funds. Thus, § 55 creates—and § 54 recognizes—an exception to the broad prohibition against those named private entities making either a "contribution" or an "expenditure."

But § 55 also *limits* such separate segregated funds to certain activities: the making of "contributions" to and "expenditures" on behalf of candidate committees, ballot question committees, political party committees, political committees, and independent committees. Sec-

tion 55 also *delineates* those individuals who can be solicited for "contributions" to separate segregated funds.

Finally, § 55 contains a further provision specifically *authorizing* the named private entities to solicit or obtain "contributions" for a separate segregated fund on an automatic basis, including but not limited to payroll deduction plans, only if the individual who is solicited affirmatively consents to the "contributions" at least once each calendar year. As with the § 54 prohibitions, the § 55 authorizations, limitations, and delineations extend only to a set of named *private* entities. That set does not include public bodies, such as school districts.

I also conclude that § 57 flatly prohibits a public body from using its resources to make a "contribution" or an "expenditure" *as the MCFA defines those words*. And there is no counterpart in § 57 to the authorizations, limitations, and delineations in § 55 that pertain to private entities. Specifically, there is no authorization in § 57 for a public body to administer a payroll deduction plan for "contributions" to a separate segregated fund.

### III. "EXPENDITURES" BY PUBLIC BODIES

The trial court's decision starts with the proposition that the administration of payroll deductions to a union PAC constitutes an "expenditure" under the MCFA. I disagree with this threshold conclusion. It is well to be clear here about the factual circumstances. The "administration" to which the trial court referred is the allocated costs of, for example, the Gull Lake Public Schools when that entity uses its resources, of whatever type or kind, to collect and deliver the payroll deductions of "contributions" of, for example, members of the Kalamazoo County Education Association/Gull Lake

Education Association to the MEA-PAC. The Gull Lake Public Schools system is a "school district" and is therefore a "public body" under the MCFA.[43] As I noted earlier, the MEA-PAC is a separate segregated fund under the MCFA.[44] The threshold question, then, is whether the allocated costs of administration by the Gull Lake Public Schools for collecting and delivering payroll deductions for "contributions" by members of the MEA affiliate to the MEA-PAC constitute an "expenditure" *as the MCFA defines that word.*

In my opinion, such costs do not constitute such an "expenditure." I base this conclusion on the plain and simple language of the MCFA. As I noted before, the definition of "expenditure" does not include expenditures for the "establishment, administration, or solicitation of contributions to a separate segregated fund . . . ."[45] The costs of administration, including the allocated costs of administration by the Gull Lake Public Schools of collecting and delivering payroll deductions for "contributions" by members of the MEA affiliate to the MEA-PAC, are therefore *not* expenditures *as the MCFA defines that word.* While these allocated costs of administration are most certainly costs, they are most certainly not "expenditures" in the self-contained looking-glass world of the MCFA. Simply, in that world, such allocated costs of administration do not constitute "expenditures" *as the MCFA defines that word.* To the extent that the majority accepts the trial court's threshold conclusion that these allocated costs of administration are "expenditures" *as the MCFA defines that word*, the majority errs.

[43] See MCL 169.211(6).

[44] See MCL 169.255(1).

[45] MCL 169.206(2)(c).

In a footnote, of all places, the Secretary proffers, without authority, the argument that the exclusion of such costs from the definition of "expenditure" relates only to § 55 private entities and not to § 57 public bodies, stating: "This exclusion pre-existed the enactment of § 57 and relates to § 55's provision of separate segregated funds for corporations, labor organizations, joint stock companies and domestic dependent sovereigns."

This argument is plainly wrong. The MCFA definition of "expenditure" could not be clearer. It specifically excludes an "expenditure" for the "administration" of a separate segregated fund. "[W]hen a statute specifically defines a given term, that definition *alone* controls."[46] Indeed, as the Secretary notes, when the Legislature has defined a term in a statute, that definition must be applied and is binding on the courts.[47] There is no language in the definition of "expenditure" that even remotely suggests that the exclusion in that definition for the costs of administration of a separate segregated fund is limited in the manner that the Secretary claims. "[N]othing may be read into the statute that is not within the manifest intent of the Legislature *as derived from the act itself*."[48] There is no hint in the MCFA that the definition of "expenditure" applies to private entities but does not apply to public bodies. There is no hint of ambiguity in the definition of "expenditure" and, as the Michigan Supreme Court has said, "[w]hen the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted."[49] "In discerning legislative

---

[46] *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996) (emphasis added).

[47] *Id.*

[48] *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999) (emphasis added).

[49] *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

intent, a court must give effect to every word, phrase, and clause in a statute . . . ."[50] "A statute must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, an harmonious and consistent enactment as a whole." [51]

Further, I note that the Legislature amended the definition of "expenditure" as recently as 2003[52] without limiting the exclusion in that definition for the costs of administration of a separate segregated fund. And the Legislature is also presumed to be aware of all existing statutes when it enacts another.[53] Here, when the Legislature enacted § 57 relating to public bodies, it specifically selected the word "expenditure," a pre-existing defined term under the MCFA with a pre-existing exclusion. Again, there is simply no support for the proposition that the definition of "expenditure," and the exclusion in that definition for the costs of administration of a separate segregated fund, does not apply to § 57 public bodies. Nor does a public body trigger the application of § 57's prohibitions when it collects and delivers payroll deductions for "contributions" by members of a labor organization to a union PAC because the cost of the administration of such collection and delivery is not an "expenditure" *as the MCFA defines that term*.

---

[50] *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004) (internal quotations and citation omitted).

[51] *State Treasurer v Wilson*, 423 Mich 138, 145; 377 NW2d 703 (1985). See also *People v Hill*, 192 Mich App 102, 114-115; 480 NW2d 913 (1991).

[52] See 2003 PA 69.

[53] *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). See also *Malcom v City of East Detroit*, 437 Mich 132, 138; 468 NW2d 479 (1991), superseded by statute as stated in *Vine v Ingham Co*, 884 F Supp 1153 (WD Mich, 1995).

Thus, at the threshold, the allocated costs of administration by the Gull Lake Public Schools, for example, of collecting and delivering payroll deductions for "contributions" by members of the MEA affiliate to the MEA-PAC are not an "illegal expenditure" under the MCFA. Rather, as the MCFA defines that word, these allocated costs are not an "expenditure" at all. To the extent that the majority now accepts the Secretary's proposition that such costs are an "illegal expenditure" under the MCFA,[54] I believe the majority to be wrong.

Further, to the extent that the majority concludes that the reimbursement of such an "illegal expenditure" fails to negate something that otherwise constitutes an "expenditure,"[55] I believe the majority overreaches in the sense that it comes to a conclusion that it need not make. The legality of the "rental," as the Mackinac Center colorfully puts it, of the apparatus of a public body to collect and deliver contributions to public employee union PACs through the device of an advance reimbursement for the costs of such collection and delivery should not be decided here if this Court recognizes that such costs are not "expenditures" at all.

### IV. ADDITIONAL ISSUES

#### A. OVERVIEW

Despite the majority's position that they "are not properly before us," I find that this Court should consider certain additional issues. Those issues include (1) the meaning of the exclusion contained in the definition of "expenditure" for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee; (2)

---

[54] *Ante* at 486.

[55] *Ante* at 486.

whether the payroll deduction by a public body consti-
tutes a "contribution" as the MCFA defines that term;
and (3) whether public bodies such as school boards,
like the Gull Lake Public Schools, have the *authority* to
collect and deliver payroll deductions for contributions
by members of a union to that union's PAC.

### B. EXCLUSIONS TO THE DEFINITION OF EXPENDITURES

I have covered the first issue above. While one might
quibble and contend that the Secretary raised this issue
in her brief, albeit in a footnote, it is true that she did
not raise it in her statement of the issues presented.
Nonetheless, the issue is clearly before this Court. One
cannot determine that a reimbursement cannot obviate
an illegal expenditure without first concluding that
there was an illegal expenditure. And one cannot con-
clude that there was an illegal expenditure without first
concluding that there was an expenditure. Since the
MCFA clearly excludes the costs for the establishment,
administration, or solicitation of contributions to a
separate segregated fund or independent committee
from the definition of an expenditure, I believe that this
Court must conclude that while the trial court erred in
its analysis, it nonetheless reached the right result but
for the wrong reasons.[56] On the basis of the plain
meaning of the words of the statute, I do not believe
that this Court can reverse the trial court on this issue
and that the majority's decision to the contrary is
clearly wrong.

In a rather colorful footnote, the majority asserts
that my dissent turns the MCFA "upside down and
inside out."[57] Perhaps the majority has missed my logic

---

[56] *Netter v Bowman*, 272 Mich App 289, 308; 725 NW2d 353 (2006).

[57] *Ante* at 488 n 5.

here. Putting it simply, and repetitiously, for the cost of collecting and delivering payroll deductions for contributions by members of the MEA affiliate to the MEA-PAC to be an "illegal expenditure" under the MCFA, it must first be an expenditure. But under the definition in § 6(2)(c) of the MCFA,[58] an expenditure does not, among other things, include "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." Thus, the cost of collecting and delivering payroll deductions for contributions by members of the MEA affiliate to the MEA-PAC cannot be an illegal expenditure because it is not an expenditure in the first place. The plain words of the statute are the best indicators of legislative intent. The fact that these plain words lead to a result that I, or the majority, may not like or may consider inconsistent with the general architecture of the MCFA is irrelevant. To me, this is relatively straightforward, and I am at a loss to understand how simply following the explicit language of the definitions contained in the MCFA turns it upside down or inside out, either concurrently or sequentially.

### C. CONTRIBUTIONS

It is also correct that no party raised or briefed the question whether the allocated costs of collecting and delivering payroll deductions by members of the MEA affiliate to the MEA-PAC are a contribution to the MEA-PAC by the Gull Lake Public Schools as the MCFA defines contributions and, if so, whether such costs are a prohibited contribution under § 57 of the MCFA. This Court needs to be quite precise on this issue. There is no question that a payroll deduction from an *employee's* salary or wages is a "payment . . . made for the purpose

---

[58] MCL 169.206(2)(c).

of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."[59] The fact that such a "contribution" is funneled through a separate segregated fund[60] does not change this conclusion. Separate segregated funds are, after all, in the business of making "contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees."[61]

However, the "contribution" in question here is not the "contribution" of an *employee*. The "contribution" in question, if it is a "contribution" at all, is the allocated costs that a public body *employer*, such as a school district, incurs as a result of collecting and delivering payroll deductions for "contributions" by members of labor organization to a union PAC. One thing, however, is certain: *if* such costs are a "contribution," then § 57 flatly prohibits a public body from making them[62] and there is no exclusion in the definition of "contribution" that would obviate this prohibition.[63]

### D. AUTHORIZATION OUTSIDE THE MCFA

I note that there is no authority within the MCFA for public bodies to collect and deliver payroll deductions for contributions by members of a union to that union's PAC. With respect to municipal officers, this Court has held that, as a general rule, " 'they have only such powers as are expressly granted by statute or by sover-

[59] MCL 169.204(1).

[60] MCL 169.255(1).

[61] *Id.*

[62] See MCL 169.257(1).

[63] See MCL 169.204.

eign authority or those which are necessarily to be implied from those granted.' "[64] And the Michigan Supreme Court has stated that "[t]he extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority."[65] As such, "[p]ublic officers have and can exercise only such powers as are conferred on them by law."[66]

The same concepts apply to public bodies. Indeed, one of the central ideas underlying our democracy is that the powers of government are few and defined.[67] "A county is a municipal corporation and possesses only those powers which have been conferred upon it by the Constitution and the statutes."[68] Further, "[n]either the Constitution nor legislative enactment gives authority to a county to expend public funds for the purpose of procuring reapportionment."[69] The power to expend county resources for political purposes could not exist because there was no legal authority granting that power.[70] Similarly, a city may not transfer public funds in order to purchase land for parking lots unless the city charter or other law specifically grants that authority.[71] A public body is therefore necessarily limited in power and must have been granted legal authority to act.

---

[64] *Presnell v Wayne Co Bd of Co Rd Comm'rs*, 105 Mich App 362, 368; 306 NW2d 516 (1981), quoting 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions, § 276, p 327.

[65] *Sittler v Bd of Control of the Michigan College of Mining & Technology*, 333 Mich 681, 687; 53 NW2d 681 (1952) (internal quotations and citation omitted).

[66] *Id.* (internal quotations and citation omitted).

[67] See James Madison, Federalist, No. 45.

[68] *Mosier v Wayne Co Bd of Auditors*, 295 Mich 27, 29; 294 NW 85 (1940).

[69] *Id.* at 31.

[70] *Id.*

[71] *McVeigh v City of Jackson*, 335 Mich 391, 398; 56 NW2d 231 (1953).

I do note, however, that MCL 408.477 states:

> Except for those deductions required or expressly per-
> mitted by law or by a collective bargaining agreement, an
> employer shall not deduct from the wages of an employee,
> directly or indirectly, any amount including an employee
> contribution to a separate segregated fund established by a
> corporation or labor organization under section 55 of the
> Michigan campaign finance act, Act No. 388 of the Public
> Acts of 1976, being section 169.255 of the Michigan Com-
> piled Laws, without the full, free and written consent of the
> employee, obtained without intimidation or fear of dis-
> charge for refusal to permit the deduction.

### E. ADDITIONAL BRIEFING

The majority does not deal with these issues on the
ground that they have not been properly presented
before this Court. I disagree.

First, this matter comes to this Court as an appeal
from a trial court decision on a declaratory ruling.
Accordingly, there are no factual matters in dispute,
and, thus, the questions before this Court are purely
legal. Second, this Court's review of the trial court's
decision is de novo; thus, this Court is in exactly the
same position as the trial court when the matter first
came to it. Third, I raised each of these issues at oral
argument, although I must admit that the responses at
that time were less than comprehensive. Fourth, as a
matter of judicial economy, avoiding these issues is, to
me, a course of action that will lead to both more
complexity and more delay. Finally, while this Court
does not generally consider issues not set forth in the
statement of questions presented, this is not a hard and
fast rule, and it is one that this Court should not
observe in this instance. Indeed, although this Court "is
*obligated* only to review issues that are properly raised
and preserved; the court is *empowered*, however, to go

beyond the issues raised and address any issue that, in
the court's opinion, justice requires be considered and
resolved."[72] "This Court is specifically authorized by
MCR 7.216(A)(7) to address issues not expressly raised
by the parties when, in this Court's discretion, 'further
or different relief' is required."[73]

Thus, rather than avoiding these issues, I would ask
the parties to brief them for this Court, so that this
Court can decide them in a timely and comprehensive
opinion that touches all the bases on these most impor-
tant questions.

---

[72] *Paschke v Retool Industries (On Rehearing)*, 198 Mich App 702, 705;
499 NW2d 453 (1993), rev'd on other grounds 445 Mich 502 (1994)
(emphasis in original) (*Paschke I*).

[73] *Id.* Although our Supreme Court concluded that this Court clearly
erred in determining, sua sponte, the merits of that appeal, *Paschke v
Retool Industries*, 445 Mich 502, 519; 519 NW2d 441 (1994), the Court
did not abrogate this Court's authority "to go beyond the issues raised
and address any issue that, in the court's opinion, justice requires be
considered and resolved." *Paschke I, supra* at 705.