*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. L. SMITH, Minor.

UNPUBLISHED
January 11, 2024

No. 366512
Wayne Circuit Court
Family Division
LC No. 2020-001085-NA

Before: GLEICHER, C.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

The trial court terminated the parental rights of respondent-father, Darnell Demetrius Smith, to his minor child, ZLS, under MCL 712A.19b(3)(h) (parent imprisoned for a period exceeding two years, such that the child will be deprived of a normal home). Because the record adequately supports that termination was in ZLS's best interests, we affirm.

## I. BACKGROUND

Smith and Kellyn Layne Beasley are the parents of ZLS. In May or June 2022, shortly before ZLS's birth, Smith was convicted in the United States District Court of possessing child pornography, 18 USC 2252. Smith will remain incarcerated for this conviction until at least June 2025. Beasley has another minor child, DAB, who is unrelated to Smith. In November 2020, DAB was removed from Beasley's care because she abused drugs during her pregnancy, and DAB tested positive for cocaine and marijuana. ZLS similarly tested positive for marijuana at birth.

Petitioner requested the trial court take jurisdiction over ZLS and terminate Smith's and Beasley's parental rights to the child. During the preliminary hearing, Yyvonne Collier, Beasley's third cousin who was caring for ZLS and DAB, expressed a desire to adopt ZLS. Smith's counsel requested that "the Court order the Department to investigate and provide, if available, at least some Zoom contact for the father in terms of visitation," and investigate ZLS's paternal relatives to determine whether she could be placed in their care. The trial court authorized the petition, provided Smith and Beasley supervised visitation, and directed petitioner to continue reasonable efforts toward reunification. The court also authorized a permanency plan of adoption and placed ZLS with Collier.

-1-

On the same day in May 2023, the trial court held DAB's best-interests hearing and ZLS's joint adjudication and dispositional hearing, in two separate proceedings. As relevant here, the trial court entered an order taking jurisdiction over ZLS and finding statutory grounds to terminate Smith's parental rights only under MCL 712A.19b(3)(h). Further, the trial court found that termination of Smith's parental rights was in ZLS's best interests based on Smith's lack of bond with ZLS, ZLS's placement and relationship with Collier and DAB, and Smith's conviction for possessing child pornography. The trial court also found that aggravated circumstances existed because Smith must register as a sex offender after his release. This appeal followed.

## II. STANDARD OF REVIEW

Whether termination of parental rights is in the child's best interests must be established by a preponderance of evidence. *In re MOTA*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and ruling that termination is in the child's best interests are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *Id*. (citation and quotation marks omitted; omission in original). Furthermore, "regard [must] be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (citation and quotation marks omitted).

## III. ANALYSIS

Smith argues the trial court improperly terminated his parental rights because termination was not in ZLS's best interests. Because the record adequately supports the court's best-interest finding, we affirm.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights. . . ." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012), citing MCL 712A.19b(5).

> [T]he focus at the best-interest stage has always been on the child, not the parent. In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it. Courts may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citations omitted; alteration in original).]

"The trial court may also consider a parent's history of domestic violence, . . . the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court should also consider the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). "[B]ecause a child's placement with relatives

weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). Additionally, under MCL 712A.13a(14)(a), reasonable efforts must be made to "[p]lace siblings removed from their home in the same foster care, kinship guardianship, or adoptive placement, unless the supervising agency documents that a joint placement would be contrary to the safety or well-being of any of the siblings."

The record shows Smith had appropriate housing before his incarceration; successfully completed drug screens, complied with a curfew, maintained employment, and participated in therapy during three years of a pretrial release program[1]; did not receive any tickets or citations while incarcerated, and had family willing to care for ZLS. Additionally, there was no evidence that Smith ever committed domestic violence against Beasley or harmed ZLS. However, the record also shows ZLS was never in Smith's care or custody because his sentence for possessing child pornography began shortly after her birth in August 2022. Smith never supported ZLS financially before he was incarcerated and testified that he would not be able to do so while in prison. By the time Smith would be released, at the earliest in June 2025, ZLS will have been without Smith's care for the first three years of her life. Additionally, Smith must register as a sex offender and enter transitional housing upon release, so ZLS could not even then be returned to Smith's care. Further, a Child Protective Services (CPS) investigator and a foster care worker both testified that ZLS had no bond with Smith. And though Smith had some limited contact with ZLS shortly after the child's birth while she was in the hospital and "some parenting time" at an agency location, he failed to attend his scheduled virtual visit in April 2023 and never saw ZLS following his incarceration.[2]

---

[1] Although Smith was indicted in 2018, he was not convicted until 2022 because the COVID-19 pandemic delayed his case.

[2] We acknowledge that petitioner arguably did not exert much effort to ensure Smith could have supervised, virtual visitation with ZLS, particularly where the trial court ordered supervised visits in October 2022 but nothing was actually scheduled until April 2023. And though a caseworker reached out to Smith via letter in December 2022, this was still well after the court's order, with nothing in the record showing Smith ever received this communication. However, to the extent that Smith argues on appeal that "the state failed to follow court orders directing that he be provided some sort of opportunity to establish a bond with [ZLS]," i.e., that petitioner failed to make sufficient efforts at reunification, this issue is absent from Smith's statement of questions presented. See *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011) ("[W]e generally do not consider any issues not set forth in the statement of questions presented."). In any event, reasonable efforts to reunify the child and family must generally be made, *except* when cases involve aggravated circumstances under MCL 712A.19a(2). *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Under MCL 712A.19a(2)(d), reasonable efforts to reunify the child need not be made if "the parent is required by court order to register under the sex offenders registration act." Here, Smith must register as a sex offender upon his release, and the trial court found aggravating circumstances present. Petitioner, therefore, was not required to make reasonable efforts towards reunification.

Further, Smith testified that (1) he still intended to plan for ZLS's care with Beasley and reunify with her after his release, (2) he was only "somewhat aware" of Beasley's case concerning DAB, and (3) he never knew Beasley was abusing cocaine and marijuana despite living with her for 10 months before ZLS's birth. While Smith acknowledged that he would not permit Beasley around ZLS if she was not mentally healthy, these facts nonetheless call into question, at least somewhat, Smith's parenting ability, particularly his judgment and ability to provide a safe, drug-free environment for ZLS.

In contrast, the record shows Collier cared for ZLS since birth and was able to meet all her basic needs, they shared a strong bond, and ZLS was resistant to being in the care of anyone but Collier. ZLS viewed Collier as her caregiver, and Collier expressed a desire to adopt ZLS and provide her with long-term care. Collier also acted as the foster parent for ZLS's sibling, DAB, and ZLS and DAB were "very attached." In fact, ZLS and DAB attended the same daycare and "have to be placed in the same room. They have to have snack and lunch and nap time together. She will not leave his side."

Based on this evidence, the trial court did not clearly err by finding that termination was in ZLS's best interests. ZLS had a stable, permanent, and loving home with Collier and DAB. The trial court expressly considered ZLS's placement with Collier when making its best-interests determination and found that ZLS's best interests warranted termination. ZLS had never been in the care of Smith or Smith's relatives at any point in her short life, and she demonstrated resistance to being in the care of anyone but Collier. Although Smith had no history of violence and there was no evidence suggesting he ever harmed ZLS, he was unable to financially provide for her and failed to take meaningful steps to plan for her care before his incarceration. By the time Smith is released and completes his stay in transitional housing, ZLS would have spent over three years with the only family she has ever known. To allow ZLS to be removed from Collier's home and placed in the care of Smith or his relatives, with whom she had no bond, would not be in her best interests.

To the extent Smith argued below that termination was not is ZLS's best interests because (1) there was no basis for ZLS to be placed with Collier and (2) his sister, Aresena Smith-Hughes, was willing and able to provide proper care and custody for ZLS while Smith was incarcerated, this argument lacks merit. Under MCL 712A.13a(14)(a), reasonable efforts must be made to "[p]lace siblings removed from their home in the same foster care, kinship guardianship, or adoptive placement, unless the supervising agency documents that a joint placement would be contrary to the safety or well-being of any of the siblings." Collier was already caring for DAB when ZLS was born, and the evidence suggests placement with Collier created safety, stability, and permanency for both children. Further, before the birth of ZLS, Smith knew he would be going to prison. Despite this, Smith did not give caseworkers information to ensure Smith-Hughes would care for ZLS during his incarceration. He only advocated for ZLS's placement with Smith-Hughes once termination proceedings commenced.[3]

---

[3] Smith testified that he gave a caseworker Smith-Hughes's contact information and informed this caseworker "[p]robably within a few days of [ZLS's] birth" of his desire that ZLS be placed with

Smith also asserts the trial court improperly based its best-interests determination on DAB "moreso [sic] than" ZLS.  However, there is no evidence supporting this contention.  In fact, the trial court's only reference to DAB when discussing ZLS's best interests was that "[ZLS is] very attached to her brother, whose [sic] also in that relative placement [with Collier]."  Otherwise, the court focused on Smith's incarceration, the bond between Smith and ZLS, Smith's general lack of contact with ZLS during the case, the length of time ZLS had been with Collier, and Collier's willingness to adopt.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

Smith-Hughes, and Smith-Hughes testified that she spoke with Smith about caring for ZLS as soon as the child was born.  However, the caseworker testified that Smith never mentioned Smith-Hughes as a possible placement until a February 2023 pretrial hearing, well after ZLS's birth and when this case commenced.  We defer to the trial court's apparent credibility determination on this matter that despite Smith-Hughes's willingness to care for ZLS, "no actions other than conversation [were taken]."