*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SMITH, Minors.

UNPUBLISHED
October 13, 2022

No. 360381
Wayne Circuit Court
Family Division
LC No. 2019-000850-NA

Before: SWARTZLE, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's orders[2] terminating her parental rights to her minor children, JS and IS, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (*ii*) (failure to rectify other conditions), (g) (failure to provide custody and care despite financial means to do so), and (j) (risk of harm to child if returned to parent). On appeal, respondent argues that the trial court clearly erred in terminating her parental rights because (1) petitioner, the Department of Health and Human Services (DHHS), presented insufficient evidence to terminate her parental rights on the statutory grounds found satisfied below, and (2) termination did not serve the children's best interests. We conclude that the trial court erred in finding MCL 712A.19b(3)(c)(*ii*) satisfied by clear and convincing evidence, but otherwise disagree. Therefore, we affirm.

## I. BACKGROUND

This case arises from an initial petition requesting that the trial court take jurisdiction over JS (IS was not yet born) and enter an order removing the child from the parents' home and making her a temporary court ward. The court appointed respondent a guardian in 2015 as a legally incapacitated individual. She is diagnosed with oppositional defiant disorder, impulse control

---

[1] The children's legal father was also a respondent below and had his parental rights to the children terminated along with respondent-mother. He is not a party in this action, nor has he otherwise appealed the trial court's termination ruling. Accordingly, we refer to respondent-mother simply as "respondent" and to the children's father as "the father."

[2] The trial court concurrently entered two separate termination orders, one for each minor child.

disorder, and major depression; the record indicates that she may have also suffered from schizophrenia and anxiety. Throughout her guardianship, the guardian offered respondent placement in a group home and Team Wellness mental health services, but respondent did not consistently take advantage of these offerings. At the outset of this case, respondent had been living in an unsuitable home with the father, and they were about to be evicted. Respondent later moved into a group home provided by her guardian for a short period, but then returned to live with the father. She and the father remained together in unsuitable housing until respondent's parental rights were terminated. Workers also expressed concerns throughout this case regarding the father's aggressive behaviors and potential domestic violence between him and respondent.

The initial petition, filed shortly after JS's birth in April 2019, alleged that it was contrary to the child's welfare to remain in the home because respondent was under a guardianship as an incapacitated adult for unaddressed mental health issues, she and the father lacked adequate provisions for the child and were evicted from their home the day before, there were indications of domestic violence in the home, and respondent and the father had failed to comply with a prepared safety plan. Specific to respondent's mental health, the petition alleged that she was diagnosed with schizophrenia, anxiety, and depression, but was not taking any medications or otherwise receiving treatment for these issues. The trial court authorized the petition, placed JS under petitioner's care, and provided respondent supervised parenting time.

A combined adjudication trial and disposition hearing took place in July 2019. Following witness testimony and closing arguments on the adjudication issue, the trial court took jurisdiction over JS under MCL 712A.2(b)(1) and (2). Concerning respondent's disposition, the referee recommended without objection that respondent be ordered to cooperate with DHHS workers and a parenting plan. Respondent was required to comply with and benefit from all services offered, including parenting classes, infant mental health services, and individual counseling with domestic violence and anger management components. She also needed to comply with all mental health services, take all prescribed medications, provide proof of legal income and suitable housing, maintain contact with the caseworker, and regularly visit JS. The parents were to have separate, supportive visitation, with each provided a parent partner to assist in their reunification efforts.

After a series of dispositional review hearings, respondent gave birth to IS in September 2020. Later that month, petitioner filed a new petition (the "IS petition") requesting that the trial court take jurisdiction over IS and enter an order removing the child from the parents' home and making him a temporary court ward. Relying on respondent's continued mental health issues and guardianship, her still-inadequate housing, the parents' domestic violence, and respondent's failure to complete her treatment plan concerning JS, this petition alleged that IS was at risk if not removed from the home. The trial court authorized the IS petition, placed IS under petitioner's care, and provided respondent supervised parenting time.

The trial court held a combined adjudication trial and disposition hearing on the IS petition in February 2021. Following witness testimony and closing arguments on the adjudication issue, the trial court took jurisdiction over IS. Concerning respondent's disposition, she was to continue with her services toward reunification for both JS and IS, with the parents to have visitation separately, given their ongoing issues with domestic violence.

After two more dispositional review hearings, petitioner, in October 2021, filed a supplemental petition to terminate respondent's parental rights to JS and IS. This petition alleged that respondent failed to complete and benefit from her required services over the previous 2½ years. The petition also noted respondent's failure throughout the case to secure adequate housing or income to properly care for the children. Further, the petition alleged that respondent missed 57 out of her 131 total offered visits with the children during the review period, came late or left visits early a number of other times, and otherwise repeatedly exhibited inadequate parenting skills during the visits she attended. The petition additionally noted that respondent recently gave birth to a third child[3] in August 2021, who petitioner also took into care shortly thereafter because of the Child Protective Services involvement regarding JS and IS. The petition requested that respondent's parental rights to JS and IS be terminated under MCL 712A.19b(3) (c)(*i*) and (*ii*), (g), and (j).

The trial court conducted respondent's termination hearing on December 13, 2021 and February 4, 2022. The trial court ultimately concluded that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j), and that termination of respondent's parental rights served the children's best interests. Accordingly, the trial court entered two orders on February 8, 2022, terminating respondent's parental rights to JS and IS. This appeal followed.

## II. STANDARDS OF REVIEW

To terminate parental rights, a trial court must find that clear and convincing evidence established a statutory ground warranting termination. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *Id*. (citation and quotation marks omitted; omission in original). This Court gives regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *Id*. Whether termination of parental rights is in a child's best interests must be established by a preponderance of evidence. *Id*. The trial court's findings and ruling that termination is in the child's best interests are also reviewed for clear error. *Id*.

## III. ANALYSIS

Respondent first argues that the trial court clearly erred in terminating her parental rights because petitioner presented insufficient evidence to warrant termination under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j). We agree regarding Subsection (3)(c)(*ii*), but otherwise disagree.

MCL 712A.19b(3) provides in relevant part:

---

[3] This child is not a subject of the instant appeal; curiously, the record includes some indications that this child was placed in petitioner's care, but other testimony indicates that this pregnancy actually resulted in a miscarriage.

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent fails to provide argument specific to each statutory ground found satisfied below; instead, she generally asserts that petitioner failed to establish her unfitness as a parent. Relying on her completion of various services, her income, her visits and bond with the children, and her confidence in being able to care for the children, respondent claims that she "clearly . . . is moving forward and taking positive steps to regain custody and care of her children." She claims without elaboration that no evidence supported any statutory ground for termination.

As an initial matter, we conclude that the trial court's finding under MCL 712A.19b(3)(c)(*ii*) was erroneous. Specifically, neither the referee nor the trial court made any effort to explain what other conditions existed in this case, nor does the record independently reflect any other conditions existing at the time of termination apart from those which led to the adjudication and are accordingly covered by Subsection (3)(c)(*i*). This error was harmless, however, because the trial court correctly found that clear and convincing evidence established statutory grounds for termination satisfied under MCL 712A.19b(3)(c)(*i*), (g), and (j), and the record supports the trial court's decision.

Here, the referee did not provide specific findings regarding each separate statutory ground; instead, she merely noted respondent's completion of only some services and continued lack of suitable housing in the almost three years since the court removed JS from her care, stating generally that statutory grounds for terminating respondent's parental rights existed under such circumstances. The trial court's order on this matter also lacked specific analysis for each separate statutory ground, though its summary of the relevant facts and overall discussion of grounds for termination provided more detail. In particular, the trial court, after summarizing respondent's ordered services and the relevant testimony, stated, "[Respondent] has completed a number of services, but her lack of housing, untreated mental health issues[,] and domestic violent relationship [sic] puts her in the position where the court finds there are statutory grounds to terminate her parental rights." Notwithstanding the referee's and the trial court's generalities, we conclude that the record adequately supports the trial court's findings under each of Subsections (3)(c)(*i*), (g), and (j).

Regarding MCL 712A.19b(3)(c)(*i*), the court's orders finding statutory grounds for termination of respondent's parental rights were entered well over two years after the initial disposition in July 2019, and clear and convincing evidence established that the conditions leading to the adjudication, namely respondent's unresolved mental health issues, lack of suitable housing, and violent relationship with the father, all continued to exist at the time of termination. Respondent still lived with the father in unsuitable housing at the time of termination. She failed over the entirety of her case to secure adequate housing, despite the apparent availability of a group home offered by her guardian.

Further, regardless of her completion of some services, respondent never consistently committed to treating her mental health issues. Particularly, while the guardian tried to have respondent return to a group home and meaningfully participate in Team Wellness services, she did neither. Indeed, respondent testified that her relationship with the father was more beneficial to her than any mental health service, a particular concern when considering their especially acrimonious relationship. Respondent's most recent testimony indicated she was taking her medications, but the record nevertheless shows that she failed to consistently do so throughout the duration of the case. Additionally, respondent's guardian disputed that respondent currently took her medications.

Respondent's relationship with the father also remained an issue. As the trial court correctly noted, respondent would show up to visitation with bruising on her face, and at one point during the case there was a no-contact order between respondent and the father. Caseworkers consistently reported that the father exhibited aggressive behaviors and the parents engaged in verbal arguments. The record indicates a specific incident when police were called but respondent still refused to separate from the father, and further reveals another instance when respondent apparently threatened the father with a knife while holding JS. Moreover, although respondent stated her intention to move away from the father at the most recent hearing, the referee did not find this credible. We defer to this credibility determination. *Mota*, 334 Mich App at 320.

Despite respondent's testimony of her willingness to plan for the children and do whatever necessary to achieve reunification, the length of time these children have already been in placement without any meaningful progress dispels any reasonable likelihood that respondent could

sufficiently rectify the issues in the foreseeable future. For these reasons, the trial court did not clearly err in finding Subsection (3)(c)(*i*) satisfied by clear and convincing evidence.

As for MCL 712A.19b(3)(g), clear and convincing evidence established respondent's failure to consistently engage with her parenting plan and complete reunification services. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003) ("[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child."). Respondent missed almost half of her scheduled parenting visits throughout this case. After IS's birth, respondent became overwhelmed during visits and would often focus solely on one of the children. The trial court addressed respondent's financial ability, specifically her income through SSI, as required by the statute. The trial court did not clearly err in concluding that respondent failed to provide proper custody or care for the children.

The trial court also did not clearly err in its finding under MCL 712A.19b(3)(j). Harm to a child under this subsection may be physical or emotional, and this Court has determined emotional harm to exist when a child is deprived a normal childhood home. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Respondent's inadequate housing created a clear risk of harm if the children were returned to her care. That, in conjunction with her longstanding domestic violence issues with the father, who also lived in the home, and her significant and consistently untreated mental health issues, support the trial court's finding.

Respondent also argues that the trial court clearly erred in terminating her parental rights because it was not in the children's best interests to do so. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine [a] child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The court's focus must be on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

In evaluating whether a child's best interests support termination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. When making its best-interest determination, the trial court may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *Moss*, 301 Mich App at 83. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Relying again[4] on her completion of various services, her income, her visits and bond with the children, and her confidence in being able to care for the children, respondent argues insufficient evidence supported the trial court's decision that termination served the children's best interests. She specifically relies on her completion of parenting classes, supportive visitation, and various required evaluations, as well as her allegedly current participation in individual therapy. Respondent also argues that her income through SSI, her stated love for and bond with the children, her regular visitation with them, and her plan to soon secure new Section 8 housing did not support termination. According to respondent, these facts all evinced her commitment and positive progress toward reunification, thus rendering termination unwarranted.[5]

Reviewing the record, we conclude that the trial court's best-interest determination was not clearly erroneous. Here, in concluding that termination served the children's best interests, the referee acknowledged respondent's completion of various services and the impact of COVID-19 in disrupting her treatment plan. The referee, however, emphasized respondent's overall lack of progress over almost three years, evinced by her inconsistent visitation, continued inadequate housing, and unwillingness to address the serious domestic violence concerns, all of which supported the trial court's determination that termination served the children's best interests. The record indicates that housing remained a barrier during the entirety of the case despite the availability of alternate accommodations through respondent's guardian. The referee also noted the diminished bond between respondent and the children. The referee concluded that respondent was not in a position to provide the children proper custody or care, there was no reasonable likelihood of change in the near future, and, therefore, termination served the children's best interests.

The record does indicate that respondent completed parenting classes and supportive visitation. In our view, however, her situation at the time of termination supported the trial court's ruling. Respondent continued to live in inadequate housing with the father almost three years after beginning reunification services. Respondent failed to address her domestic violence issues with

---

[4] We note that respondent's argument heavily conflates the separate issues regarding statutory grounds for termination and the children's best interests.

[5] Respondent also implies the existence of some unspecified error because, when considering her disabilities, she "was never given any specialized services to enable her to successfully complete her treatment plan and reunite with her children." Notwithstanding the extensive services provided to respondent throughout this case, we do not explicitly address this claim because respondent never raised it in her statement of the issues; more importantly, though, she provides absolutely no supporting legal authority. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he [or she] give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted); see also *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011) ("[W]e generally do not consider any issues not set forth in the statement of questions presented.").

the father and apparently had no intention of doing so. Respondent's inconsistent visitation, which worsened as this case progressed, also supported termination.

The record indicates that respondent failed to consistently take her medication and suffered from ongoing mental health issues. Further, multiple caseworkers disputed respondent's stated bond with the children. Respondent continued to have difficulties in handling both children during visits. Relatedly, the children's medical issues and specialized needs raised additional concerns regarding respondent's ability to properly care for them, particularly in light of her own mental deficiencies.

Finally, the children have lived for some time and thrived in their current foster care placement, and that family has expressed a willingness to adopt and permanently care for them. Accordingly, the children's need for permanence and stability also favored termination. Analysis of the record establishes that the best-interest factors favored termination of respondent's parental rights. The trial court properly determined, based on the record evidence, that termination served the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ James Robert Redford