*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VMH, NDW, and YTW, Minors.

UNPUBLISHED
October 19, 2023

No. 363453
Wayne Circuit Court
Family Division
LC No. 2020-000989-NA

*In re* KMH, VMH, NDW, and YTW, Minors.

No. 363454
Wayne Circuit Court
Family Division
LC No. 2020-000989-NA

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

In Docket No. 363453, respondent-father appeals as of right the trial court's September 2022 order terminating his parental rights to his minor children—VMH, NDW, and YTW[1]—pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper custody or care), and (j) (risk of harm if child is returned to parent's home). On appeal, respondent-father argues that the trial court clearly erred by terminating his parental rights because it was not in the children's best interests to do so.

In Docket No. 363454, respondent-mother also appeals as of right the trial court's order terminating her parental rights to her minor children—KMH, VMH, NDW, and YTW[2]—pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). On appeal, respondent-mother argues that the trial court clearly erred by terminating her parental rights because (1) petitioner presented insufficient

---

[1] These children were 15, 13 and 11 when their parents' parental rights were terminated.

[2] KMH was 10 at the time his parents' rights were terminated.

evidence to terminate her parental rights on the statutory grounds found satisfied below, and (2) it was not in the children's best interests to do so. For the reasons set forth in this opinion, we affirm in both cases.

## I. BACKGROUND

Respondent-mother and respondent-father share three children, VMH, YTW, and NDW. Respondent-mother has two additional children, KMH and MRJ. KMH's biological father remains unknown,[3] and MRJ is not involved in this appeal.[4]

After respondents admitted to various allegations in the child protective petition at the December 10, 2020 adjudication, the trial court ordered them to comply with and benefit from a multi-faceted parent agency agreement involving random weekly drug and alcohol screens; parenting classes; individual, family, substance abuse, and domestic violence counseling; regular visitation with their respective children; the maintenance of suitable housing and income; and regular contact with caseworkers and attendance at court hearings. Further, the parenting plan required respondent-mother to complete a psychological evaluation and follow any resulting recommendations. At the time of the initial filing, all the children were doing well in placement, with VMH, NDW, and KMH living with their maternal grandmother; YTW with a maternal aunt; and MRJ with her nonrespondent father.

Following a series of dispositional review hearings, petitioner filed a supplemental petition to terminate respondents' parental rights based on its findings that both respondents failed to submit to drug screens, consistently visit the children, maintain regular contact with workers, and meaningfully engage with, complete, and benefit from any of their ordered services. At that time, respondent-mother had not obtained suitable housing or completed her psychological evaluation.

On April 21, June 15, and July 19, 2022, the trial court held combined termination hearing and best-interest hearings, finding that statutory grounds for termination were proven by clear and convincing evidence for both respondents under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The court did not explicitly analyze each statutory ground. Instead, it generally reasoned that despite both respondents' recent improvements in compliance with the parenting plan, they exhibited over the entirety of the case a lack of commitment to their children and to achieving reunification. It also clarified that the parents' lack of stable income did not as warrant termination, and that domestic violence was "not the biggest issue" for respondents because there was no evidence of recent domestic violence. Notably, the court also stated it was not holding respondent-father's health issues against him, but it highlighted his substantial history of noncompliance even before his issues manifested in March 2022.

---

[3] KMH's unknown father had his parental rights over the child terminated along with respondent-mother's. This unknown father will not be discussed further.

[4] MRJ was placed with her nonrespondent father throughout this case, and she was dismissed from these proceedings after the trial court granted her father's motion for sole legal and physical custody of MRJ.

The trial court concluded, however, that terminating both respondents' parental rights to their respective children was in the children's best interests, specifically because of respondents' limited contact with the children throughout the case and failure to demonstrate an ability to consistently be there for the children. The trial court acknowledged for the record that the children were placed with relatives, but it opined that termination was nevertheless warranted given the children's needs for permanence and stability. Accordingly, the trial court entered an order terminating both respondents' parental rights to VMH, NDW, and YTW, as well as respondent-mother's parental rights to KMH. These appeals followed.

## II. STANDARDS OF REVIEW

In order to terminate parental rights, a trial court must find that a statutory ground has been established by clear and convincing evidence. *In re MOTA*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *Id*. (citation and quotation marks omitted; omission in original). Furthermore, "regard [must] be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (citation and quotation marks omitted). Whether termination of parental rights is in the child's best interests must be established by a preponderance of evidence. *Id*. The trial court's findings and ruling that termination is in the child's best interests are also reviewed for clear error. *Id*.

## III. ANALYSIS

### A. STATUTORY GROUNDS

Respondent-mother argues that there was insufficient evidence to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We conclude that the trial court clearly erred by finding that termination of respondent-mother's parental rights was warranted under MCL 712A.19b(3)(c)(*ii*), and (j) but its findings regarding MCL 712A.19b(3)(c)(*i*), (g) were adequately supported by the record.[5]

According to respondent-mother, she was in substantial compliance with the parenting plan at the time of termination and, therefore, the statutory bases relied on by the court were not supported by clear and convincing evidence. Respondent-mother argues that the record reveals she had suitable housing, recently completed her psychological evaluation and started engaging in various of her ordered services, was making money cleaning houses and was looking for more work, and her visitation was going well despite some issues with consistency. Further, respondent-mother argues that it was unreasonable for the trial court not to consider a guardianship in lieu of termination given the children's older ages and placements with relatives who wanted

---

[5] Respondent-father only challenges the trial court's best interests findings, which will be discussed in section B.

guardianships.[6]  Lastly, because the evidence of statutory grounds was lacking, the court clearly erred and abused its discretion by taking permanent custody of the children under the provisions it cited.

As relevant here, a trial court may terminate parental rights under MCL 712A.19b(3) if it finds by clear and convincing evidence any of the following:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

We conclude that the trial court's finding that MCL 712A.19b(3)(c)(*ii*) and (j) supported termination of respondent-mother's parental rights was clearly erroneous.  Specifically, no additional petitions were filed after adjudication yet before termination asserting additional grounds for termination.  And the trial court made no effort to explain what other conditions existed in this case, nor does the record independently reflect any other conditions existing at the time of termination apart from those which led to the adjudication and are accordingly covered by Subsection (3)(c)(*i*).  The trial court also failed to make a meaningful record relative to Subsection (3)(c)(*i*)(j).  This error was harmless, however, because the trial court found clear and convincing

---

[6] Respondent-mother fails to support this point with any authority or connect it to the salient issue regarding statutory grounds for termination.  In any event, we address this issue *infra*.

evidence that established statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and the record supports these findings. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012) ("Only one statutory ground for termination need be established.").

First, concerning MCL 712A.19b(3)(c)(*i*), the trial court found statutory grounds for termination of respondent-mother's parental rights 18 months after the initial disposition in December 2020, thus satisfying Subsection (3)(c)(*i*)'s temporal requirement, and clear and convincing evidence established that the conditions leading to the adjudication, namely respondent-mother's cocaine use, mental health issues, and her history of domestic violence, were unresolved at the time of termination. Critically, respondent-mother never meaningfully and consistently engaged with the agency agreement as necessary to demonstrate to the court that she had overcome these issues that caused the children to come under petitioner's care. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003), quoting *In Re Trejo*, 462 Mich 341, 360-363; 612 NW2d 407 (2000). ("[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child."). Respondent-mother failed to visit her minor children on a regular basis, refused to get the mental health treatment that professionals told her she needed and failed to attend the vast majority of her drug screens. When respondent-mother finally attended her court-ordered psychological evaluation, respondent-mother told the psychologist she had been diagnosed with bipolar disorder and described herself as having multiple personality disorder—she said she was "three people." She admitted she was not taking any medication to address her symptoms, however. According to the psychologist who performed the evaluation, respondent-mother presented to the psychologist with "significant mental illness and poor insight." The psychologist also noted that respondent-mother's emotional state interfered with her testing performance. Ultimately, the psychologist opined that respondent-mother would not be able to parent the children until her symptoms of mental illness were under control. Unfortunately, respondent-mother failed to participate in and benefit from the mental health treatment that was available to her.

Regardless of respondent-mother having income to support the children at times during these proceedings, her last-minute engagement with some services, and her procurement of adequate housing, she missed all her drug screens in this case until the weeks just before termination, was repeatedly terminated from services for nonparticipation, and was inconsistent with visiting the children. Notably, while respondent-mother blamed her inconsistency on transportation issues, her sporadic attendance continued even after workers provided her bus passes.[7] And there is no dispute that respondent-mother had not completed any aspect of the parenting plan by the time of termination. Further, the length of time the minor children had already been in placement without any meaningful, consistent progress by respondent-mother dispels any reasonable likelihood that she could sufficiently rectify her issues in the foreseeable future. For these reasons, the trial court did not clearly err in finding Subsection (3)(c)(*i*) satisfied by clear and convincing evidence. *In re JK*, 468 Mich at 214.

---

[7] Respondent-mother was offered bus passes at the inception of these proceedings but informed the worker who offered the passes she was not interested.

As for MCL 712A.19b(3)(g), clear and convincing evidence established respondent-mother's failure to consistently engage with her parenting plan and complete reunification services. As discussed, respondent-mother never completed, or even engaged consistently with, the parenting plan. She refused to participate in much needed mental health treatment, domestic abuse and parenting classes and substance abuse counseling. Further, respondent-mother missed 39 of 62 opportunities to visit the children between December 2020, and December 2021, leading one of the minor children to inform a social worker she no longer wanted to see her mother. The minor children had already been in relative placement for 18 months and given the record evidence already referred to, particularly respondent-mother's minimal involvement with the children since they were placed under petitioner's care, we conclude that the record sufficiently supported the trial court's finding under Subsection (3)(g). *In re JK*, 468 Mich at 214.

## B. BEST INTERESTS

Respondents argue that the trial court clearly erred in terminating their parental rights because it was not in the children's best interests to do so.

According to respondent-father, at the time of termination, he had suitable housing, was engaged in—and benefiting from—therapy and parenting classes, had adequate income, was bonded with his children, and was in the process of applying for Social Security benefits. Further, he argues, his parent agency agreement here was not reasonably aimed at reunification because "there was no case planning to accommodate [respondent-father's] medical treatment schedule or to ensure release of his treatment records." And, according to respondent-father, the trial court inadequately considered that respondent-father's significant medical issues hindered his ability to comply with services. Respondent-father argues that termination was also improper given that respondent-father's children were in their teen or preteen years and placed with relatives. Respondent-father claims that the best interests of these children supported allowing him to maintain his bond with them and, for all the foregoing reasons, preserving his parental rights.[8] The record belies all of respondent-father's arguments. From the inception of these proceedings until just before the court ordered respondent-father's parental rights terminated, respondent-father was absent from the proceedings. Respondent-father failed to attend most of the court proceedings, his attorney was not able to contact him, he failed to submit to any drug screens during that time, and made perhaps 25% of his scheduled visits with the minor children. Just prior to termination, respondent-father had not completed and for the most part had not even enrolled in any of the court ordered services. Hence, for 18 months, respondent-father failed to undertake any significant actions to reunite with his minor children, and the foster care case manager only knew about

---

[8] To the extent some of respondent-father's phrasing under this best-interest issue can be construed as a distinct or related argument that select statutory grounds for terminating respondent-father's parental rights were unsupported by the record, he never clearly makes such an argument, and his statement of the single question presented addresses only best interests. See *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011) ("[W]e generally do not consider any issues not set forth in the statement of questions presented."). Accordingly, our discussion of respondent-father's appeal is limited to the best-interests issue.

respondent-father's March 6, 2022 hospitalization as a result of being shot in the stomach in 2006 but she was not aware of any prior hospitalizations.

According to respondent-mother, she was making extraordinary efforts to comply with the parenting plan by the time of termination, including attaining suitable housing and improving her attitude. Further, she testified to having a strong bond with the children, who were all placed with relatives. Respondent-mother argues that, under these circumstances, termination could not have been in the children's best interests.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 41-42. "The trial court should weigh all the evidence available to determine [a] child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When making its best-interest determination, the trial court may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). The court's focus must be on the child, not the parent. *Moss*, 301 Mich App at 87.

In evaluating whether a child's best interests support termination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. Further, a child's placement with relatives weighs against termination and is a factor the trial court must consider. *MOTA*, 334 Mich App at 321. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Here, the trial court did not clearly err by determining that termination of respondent-father's parental rights was in his children's best interests. Respondent-father only began meaningfully engaging in services in Spring 2022, almost a year and a half after his children were placed under care. He never submitted any of the 62 drug screens offered to him, and as previously indicated, his visitation was, at best, sporadic throughout the case. Even though respondent-father reported significant medical issues in March 2022 that affected his ability to complete services and consistently visit his children, he was apparently healthy for the prior 15 months (and, therefore, for the vast majority of this case), but still was not engaged with services during this time. As previously stated, respondent-father failed to make most of the court proceedings, failed to maintain contact with his assigned worker and his attorney. In sum, respondent-father's actions displayed a significant lack of interest in reuniting with his minor children.

Additionally, the trial court explicitly addressed, as required, that respondent-father's children were placed with relatives, but it determined that their needs for permanence and stability nevertheless warranted termination. Critically, respondent-father's children had been under

petitioner's care for 18 months. Regardless of respondent-father's stated bond with his children, their placement with relatives, his purported ability to provide care and custody for them, and his suitable housing, we agree with the trial court's determination on this issue. We note that respondent-father's stated bond with his children was not reciprocated by any of the minor children. When asked if they wanted to live with respondent-father, none of the minor children expressed any interest in returning either to respondent-father's or respondent-mother's care. In fact, one of the minor children told a social worker that respondent-father was not his dad. On this record, we conclude that respondent-father's children's best interests supported termination.

Next, the trial court did not clearly err by determining that termination of respondent-mother's parental rights was in the children's best interests. Similar to respondent-father, respondent-mother effectively failed to meaningfully and consistently engage with the parenting plan during the vast majority of this case. She only engaged with the parenting plan on the very eve of termination, and even by then had failed to complete any of the court ordered services. Apart from the two weeks or so just before termination, respondent-mother submitted just one drug screen, and she did not participate in any services. And her visitation remained sporadic throughout this case.

Further, the trial court explicitly addressed, as required, that the children were placed with relatives, but it determined that their needs for permanence and stability nevertheless warranted termination of respondent-mother's parental rights. Critically, the children had been under petitioner's care for 18 months, during which respondent-mother's contact with them was limited and sporadic. Accordingly, regardless of respondent-mother's stated bond with the children and their placements with relatives, we agree with the trial court that, given respondent-mother's failure to engage in court ordered services to achieve reunification over the vast majority of the 18 months the children were under petitioner's care, termination was in the children's best interests.

Lastly, to the extent that respondent-mother argues that the trial court's decision to terminate her parental rights was flawed because the court failed to consider a guardianship for the children as an alternative to termination, we disagree. Critically, the appointment of a guardian is typically done in an effort to avoid the initiation of termination proceedings. See *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id*. at 707. But under any circumstance, a trial court may only appoint a guardian if "it is in the child's best interests to appoint a guardian." *Id*. (citations omitted).

Notably, while there was some discussion before one of the referees earlier in the case about pursuing a guardianship in lieu of termination for the older two children, nothing appears to ever have come of this. There was absolutely no discussion of pursuing a guardianship when the trial court actually heard and decided the case. Nevertheless, given the foregoing analysis, we conclude that termination of respondent-mother's parental rights, not a guardianship for the children, was in their best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney